IRA BABCOCK, Appellant, *v.* THE LAKE SHORE AND MICHIGAN SOUTHERN RAILWAY COMPANY, Respondent.

Where a common carrier has transported freight under a special contract limiting his common-law liability, and by which he undertook for an agreed compensation to carry it to the terminus of his route, and then deliver it to another carrier, no authority results from the relation or from the contract, empowering him to enter into a special contract on behalf of the owner with the next carrier limiting or restricting the liability of the latter ; the whole duty of the first carrier terminates with the delivery of the goods to the second, and the common-law liability of the latter attaches at once by necessary implication upon the receipt thereof.

Where a carrier undertakes for a specified compensation to transport over his own route, and to deliver at the terminus thereof goods marked to a consignee beyond such terminus, a through contract will not be implied from the fact that in the description of the goods in the contract the marks showing the ultimate destination are given. Nor is such a contract extended or affected by the fact that in making it a printed blank is used adapted to a through contract extending over other and connecting lines, and making the contract to read ostensibly for and on behalf of all the carriers over whose lines the goods may pass. The written portions of the contract will control, and only so much of the printed matter in the blank form used as is consistent therewith is of any effect; all that is incompatible with or inappropriate to the intent of the parties as indicated by the written portions is to be rejected.

(Argued May 21, 1872; decided May 28, 1872.)

APPEAL from judgment of the General Term of the Supreme Court in the fourth judicial department, affirming a judgment for the defendant entered on decision of the court upon trial without a jury.  (Rep. below, 43 How. Pr.R., 317.)

The action was brought to recover the value of a quantity

of petroleum oil destroyed by fire while in possession of defendant as common carrier.

On November 14th, 1867, the plaintiff shipped fifty-six barrels of refined petroleum, at Oil City, in the State of Pennsylvania, by the Atlantic and Great Western Railway Company, under an agreement, of which the following is a copy:

"Atlantic and Great Western Railway, 7.35.

"Oil City Station, November 14th, 1867.

"Received from Babcock for shipment by The Atlantic and Great Western Railway Company, the following property in good order, except as noted, marked and consigned as follows:

| Mark. | Article. |
|---|---|
| J. W. O. & Co. | |
| J. W. Osborne & Co. | 56 Bbls. R. Oil, Car 1,848. |
| Albany, N. Y. | |

{ 5 Cent Internal Revenue }
{    Stamp, canceled.    }

Rate in cents per 100 lbs.   $25.00 per car.

Which this company and connecting roads agree to deliver with as reasonable dispatch as their general business will permit, delays and accidents excepted, but they do not agree to transport the same by any particular train, nor in any specified time."

"Subject to the conditions below:

"At Corry station upon payment of freight and charges thereon.

"In consideration of the reduced rate given and specified above for the transportation of petroleum, it is understood that the owner or shipper assumes all risk of damage from fire or leakage or from any cause whatever while in transit, or at the depots or stations of any of the companies whose lines of road it may be transported upon or over.

"The rates on petroleum, when taken at the companies' risk, or damage from fire or other causes, being double the amount herein specified. 'The owner or shipper of this property, in consideration of having the same transported at such reduced rates, does hereby release this and all other

companies over whose lines of road it may pass, from all claim for loss or damage by fire, leakage or any other cause whatever, such products of petroleum as naphtha, benzine, benzole, etc., etc., being exceedingly hazardous, will not be transported except by special agreement as to time of receiving and rates to be charged ; and any party shipping such articles without notifying the company and getting their consent, shall not only forfeit all claim against the company for damages sustained, but shall be accountable to the company for loss it may sustain in consequence thereof.

" ' The acceptance of this receipt by the owner or shipper will be considered as evidence of his assent to all the conditions contained therein.'

.." D. W. GURNSEY, Jr., *Agent.*"

The price stated in the contract was the customary price for the transportation of freight from Oil City to Corry.

That company carried the petroleum to Corry, and there delivered it to The Buffalo and Pittsburg Railroad Company, which company carried it to Brocton, in this State, and delivered it to the Buffalo and Erie Railroad Company, of which company defendant is successor and liable for its debts and obligations. While in the possession of the Buffalo and Erie Railroad Company the oil was destroyed by fire.

*George W. Cothran* for the appellant. It is contrary to public policy to permit a common carrier to restrict its common-law liability. (*Pa. R. R. Co.* v. *Henderson*, 51 Penn., 315.) The exemption must at least be secured by clear and unambiguous language. (*French* v. *Buffalo, N. Y. & Erie R. R. Co.*, 4 Keyes, 108; *Steam Navigation Co.* v. *Merchants' Bank*, 6 How. U. S. R., 344; *Wells* v. *Steam Nav. Co.*, 8 N. Y., 375.) To release a carrier from his common-law liability there must be a consideration. (*Bissell* v. *N. Y. C. R. R. Co.*, 25 N. Y., 442.)

*A. P. Laning* for the respondent. A common carrier may by special agreement limit his liability. (*Steinweg* v. *The*

*Erie R'y,* 43 N. Y., 123; *French* v. *The Buffalo, New York and Erie Railroad Co.,* 4 Keyes, 108; *Dorr* v. *The New Jersey Steam Navigation Co.,* 1 Kernan, 485; *Bissell* v. *N. Y. C. R. R. Co.,* 25 N. Y., 442.) The written contract recites a good and valid consideration, and defendant is entitled to the benefit of its stipulations. (*Manhattan Oil Co.* v. *Cam. and Am. R. R. Co.,* 52 Barb., 72; *Maghee* v. *The Cam. and Am. R. R. Trans. Co.,* 45 N. Y., 514.)

ALLEN, J. To exempt the defendant, the successor in liability to the Buffalo and Erie Railroad Company, from the common-law responsibility of common carriers, extending to all losses except those resulting from the act of God or the public enemies, it must appear that the oil of the plaintiff was, at the time of its destruction, in the possession of the Buffalo and Erie Railroad Company, for transportation under a special contract, restricting the liability of the carrier, made by and with the plaintiff, or some one authorized to act in his behalf. The contract with the Atlantic and Great Western Railway Company was special in its terms, and by it the liabilities of the carrier were greatly restricted, and a loss by fire was excepted from the risks of the carrier, and if that was a through contract, that is, a contract for the carriage of the property to and a delivery of it at Albany, its ultimate destination, each carrier in the course of its transit, including the Buffalo and Erie Railroad Company, was entitled to the benefit of the exemptions from liability secured by it. It would be regarded as made for the benefit of all who should undertake the carriage of the goods upon the terms and conditions prescribed by it.

If it was not a through contract, then the Buffalo and Erie Railroad Company received the goods as common carriers, and are liable as such for all losses not within the recognized exceptions, that is, except those which were inevitable or occasioned by public enemies.

If the first carrier, the Atlantic and Great Western Railway Company, only undertook for the carriage of the oil to Corry for an agreed compensation, and the delivery at that

place to another carrier, there was no authority resulting from the relation, or the contract between that company and the plaintiff, to enter into a special contract, in behalf of the plaintiff, with the next carrier at Corry, to limit and restrict the liability of such carrier in any respect. There was no agency created ; the whole duty of the Atlantic and Great Western Railway Company was that of carrier, and terminated with the delivery of the goods to the next carrier, and the common-law liability of the carrier receiving the goods attached at once and by necessary implication upon their receipt.

The goods were received by the Atlantic and Great Western Railway Company at Oil City, in Pennsylvania, addressed to J. W. O. & Co., Albany, New York, and, had they been received without a special contract, a contract would not have been implied on the part of the railway company to carry the goods or provide for their carriage beyond the terminus of its road. Its whole duty would have been performed by transporting them to the extent of its own route and delivering them to the next connecting carrier, that is, the railway company would have been liable as a carrier over its own road and as a forwarder from the terminus of its line. This is the recognized rule in this and other States, although it is otherwise in England. (*Root* v. *The Great Western Railway Co.*, 45 N. Y., 524, and cases cited by Rapallo, J.,; Redfield on Carriers, § 181, and cases cited in note 9.) But the goods were received by the Atlantic and Great Western Railway Company under a special contract, and upon the interpretation of that contract and the effect to be given to it the decision of this case hinges. In the agreement the goods were described as "56 bbls. R. Oil, Car 1,848," and in the margin "mark, J. W. O. & Co., J. W. Osborne & Co., Albany, N. Y." The mark or direction of the property was given to identify and distinguish it from other property of the same character, and was not inserted as a part of the agreement, and from it a contract to carry to Albany would not be implied. The agreement was by "this (The A. & G. W. R.) company

and connecting roads," to deliver the property at Corry station, which was the terminus of the roads of that company, upon payment of freight and charges thereon. The freight was specified at twenty-five dollars per car. This was the freight to Corry, and no rate was agreed upon or specified for transportation beyond that place. By the agreement the plaintiff, "in consideration of the reduced rate given and specified above for the transportation of petroleum," assumed certain risks, including that by which the property was destroyed, "while in transit, or the depots or station of any of the companies whose lines of road it may be transported upon or over."

The plaintiff did, "in consideration of having the petroleum transported at such reduced rates," release the A. & G. W. R. Co. and all other companies over whose lines of road it may pass, from all claim for loss or damage by fire," etc. The agreement was made by filling up a printed form adapted to a contract for the transportation of goods beyond the route of the contracting carrier, and over the lines of other and connecting roads to distant places. The parties merely inserted in writing the date and place of shipment, the name of the owner, the description of the property, the freight and the place of delivery (Corry station). The commencement and termination of the responsibility of the carrier (the A. & G. W. R. Co.) were expressed clearly and distinctly in the written parts of the contract.

The goods were not lost or destroyed between the place of their receipt and Corry, nor until after they had left Corry in charge of other carriers and had come into the possession of the Buffalo and Erie Railway Company, in the course of their transit to Albany. The contract was for the carriage of the oil to Corry, and only so much of the printed matter of the blank form used as is consistent with and appropriate to that contract is of any effect. The intent of the contracting parties is to be gathered from the entire instrument, the written part controlling where that and the printed are in conflict, and the latter to be rejected when incompatible with

or inappropriate to the intent of the parties, as clearly indicated by the written portion. The printed form is very general, and contains provisions adapted to contracts differing essentially from this, some of which are not adapted to a contract for the carriage of goods wholly within the limits of the contracting carrier's line of road, and such parts as are inapplicable must be rejected as surplusage, and the written portion of the agreement prevail. (*Leeds* v. *Mechanics' Ins. Co.*, 4 Seld., 351; *Harper* v. *Albany Mutual Ins. Co.*, 17 N. Y., 194.) The limitation of the carrier's liability by the contract is necessarily confined to the service contracted for, and the carriers who were parties to it.

Carriers who are not named in a contract for the carriage of goods, and who are not formal parties to it, may, under certain circumstances, have the benefit of it. Such is the case when a contract is made by one of several carriers upon connecting lines or routes for the carriage of property over the several routes for an agreed price by authority, express or implied, of all the carriers. So, too, in the absence of any authority in advance, or any usage from which an authority might be inferred, a contract by one carrier for the transportation of goods over his own and connecting lines, adopted and acted upon by the other carriers, would enure to the benefit of all thus ratifying it, and performing service under it. But in such and the like cases the contract has respect to and provides for the services of the carriers upon the connecting routes. *Maghee* v. *The Camden & Amboy R. Trans. Co.* (45 N. Y., 514), and *Lamb* v. *Same* (46 N. Y., 272), are in point, and illustrate the rule.

There was no agreement here for the carriage of the oil beyond Corry, no rate of freight agreed upon to any other point, and the carrier was entitled to receive the freight earned, twenty-five dollars per car, on delivery of the oil at that place. There was no consideration for an agreement by the plaintiff to relieve the carriers who should thereafter receive the property for transportation from the common-law liabilities, and no such agreement was made. It is claimed

that the finding of the judge by whom the cause was tried, that the Buffalo and Erie Railroad Company received the property, "under and in pursuance of said agreement, upon its said railroad from Brocton to Buffalo," is conclusive as a finding of fact, and entitles the defendant absolutely to the benefit of the stipulations of that contract.  The answer is that the transportation from Brocton to Buffalo is not within the limits of the contract, and it was simply impossible that goods could be carried between those places in pursuance of a contract expressly providing for an entirely different transportation, or a transportation between two other places on a different route.  While twenty-five dollars per car freight might have been a reasonable or a reduced rate for transportation from Oil City to Corry, it may have been an entirely inadequate or an exorbitant rate for transporting the same property from Corry to Brocton, from Brocton to Buffalo, or Buffalo to Albany.  It is certainly improbable that the same freight was to be the compensation to each of the railroad companies by whom the oil should be carried in its transit to Albany.

The contract was not intended as a through contract.  The plaintiff has no claim under it either against the Atlantic and Great Western Railway Company or any of the connecting roads for the carriage of the goods beyond Corry, and it necessarily follows that its stipulations did not extend to or affect the carriage beyond that place.

The Camden and Amboy R. and T. Co. were held liable as common carriers under a contract somewhat like this, made with the Pennsylvania Railroad Company, under which the goods were transported by the latter company to Philadelphia and there delivered to the former company.  (*C. & A. R. & T. Co.* v. *Forsythe*, 61 Penn. R., 81.)

*Bristol & Exeter Railway Co.* v. *Cummings* (5 H. and N. 969) merely held, carrying out the doctrine of *Muschamp* v. *The Lancaster & Preston Junction Railway Co.* (8 M. and W., 421), which has not been followed in this State, that the contract of carriage in that case was a through contract made

by the Great Western Railway Co. for the carriage of the goods to their ultimate destination, and that the contracting carrier was solely liable for the loss of the goods in transit, although they were lost while in course of transportation by the defendant who received them from the first carrier at the terminus of its road for transportation to the place to which they were directed. This case would not be followed with us, but each carrier would be held responsible for a loss or damage to the goods while in his custody, and the only question would be as to the extent of his liability, and whether he was entitled to the benefit of any stipulations in the contract made with the first carrier.

The defendant, upon the case made and facts found by the judge at the trial, was subject to all the common-law liabilities of carriers, and the stipulations of the contract with the Atlantic and G. W. R. Co. did not extend to the transportation of the goods by the defendant. It is not necessary to consider at this time the liability of the parties, in case it should appear that the oil was being carried at a reduced rate of freight.

The judgment must be reversed and a new trial granted.

All concur, except PECKHAM and RAPALLO, JJ., not voting.

Judgment reversed.