HINKLEY *et al.* v. NEW YORK CENTRAL AND HUDSON RIVER RAILROAD COMPANY, appellant.

*Common carriers — limitation of liability by condition in receipt — Agency — Evidence — custom.*

In an action to recover for the loss of oil burned while being transported over defendant's railroad, it appeared that the oil was shipped upon a connecting road without any specific agreement as to liability for loss. The connecting road delivered the oil to defendant, and took from it a receipt therefor, containing this, "Owner's risk, F. & L." (meaning fire and leakage). *Held,* (1) that defendant, as a common carrier, had a right to limit its liability upon the freight; (2) that the connecting railroad was plaintiff's agent to deliver such oil to defendant; and (3) that the condition in the receipt given to such agent was valid, and exempted defendant from liability for the loss.

*Held,* also, that defendant was entitled to show what was its uniform custom in reference to transporting oil as to fire and leakage, to establish the fact that it did not hold itself out as a carrier of oil at its own risk in the respects mentioned.

APPEAL from a judgment in favor of plaintiffs in an action tried at the Onondaga circuit by the court without a jury.

The action was brought by the plaintiffs, Calvin G. Hinkley and Henry Hinkley, to recover of the defendant the value of two car loads of oil which were burned on defendant's railroad while being transported thereon.

This oil was shipped at Titusville, in the State of Pennsylvania, on the 24th day of May, 1871, upon the Oil Creek and Alleghany

River railway, a road running from Titusville to Corry, in the State of Pennsylvania, and there connecting with the Buffalo, Corry and Pittsburgh railroad, which run from Corry to Brocton, and which said road connected with the Lake Shore and Michigan Southern railway. The last-named road run from Brocton to Buffalo, where it connected with the defendant's road.

No contract was made between the plaintiffs and any of these railroad companies, except that implied from the circumstances that the Oil Creek Company received this oil at the request of the plaintiffs, with a request to send it to Syracuse and Potsdam, in the State of New York, points beyond the terminus of the Oil Creek railroad. The Oil Creek railroad billed the oil to Corry. The road running from Corry to Buffalo billed it from Corry to Buffalo, and the defendant did the same from Buffalo to the destination of the oil.

At the time the oil was received by the defendant at Buffalo, it delivered to the Lake Shore and Michigan Southern Railroad Company a receipt, in substance, as follows :

"Received from the Lake Shore and Michigan Southern Railway Company, the following articles in good order."

"BUFFALO, *May* 28, 1871.
"C. G. Hinkley, Syracuse, N. Y., 56 bbls. oil, 1 barrel empty and two part full."

"Received May 28, owner's risk, F. and L. Run through. Contents supposed to be in good order.
"G. H. PATTERSON."

The names of other consignees of oil received at the same time, with a description of the consignment of each, was included in the receipt. At the trial testimony was given on behalf of defendant, showing that the letters "F." and "L." in the receipt were intended to express "fire" and "leakage," and were so understood by the railway employees and agents of both the delivering and receiving companies.

At the trial the defendants offered to show that the universal custom of defendant in transporting oil, was that it should be at the owner's risk of fire and leakage. The evidence was objected to and excluded. The defendant also offered to show that it was also

the custom upon all the intermediate roads to the place of shipment of the oil, to carry at the owner's risk of fire and leakage ; this was also excluded upon plaintiff's objection.

The court filed its decision, holding defendant liable and directing judgment against it for $1,314.92, with costs.

*Pratt, Mitchell & Brown*, for appellants.

*Ruger, Wallace & Jenney*, for respondents.

E. DARWIN SMITH, J. The receipt which the agent of the defendant gave for the oil on its delivery to it by the Lake Shore and Michigan Southern Railway Company is an express contract by the defendant for the transportation of said oil to its place of destination.

If the defendant had received said oil without any express contract or without giving a receipt expressing the terms or conditions upon which it was received, it would doubtless have been bound to deliver it safely according to the ordinary common-law duty of common carriers. The law would imply such a contract in the absence of any express contract. I am entirely unable to see why the terms of the receipt in which the defendant agree to run said freight through, meaning over their railroad, " at the owner's risk of fire and leakage," were not entirely valid, and why they do not fix and determine the rights and duties of the respective parties in respect to such oil. It is well settled now that a common carrier may fix the limit of his liability for the transportation of freight and passengers by contract and restrict his common-law liability.

When he receives property for transportation he may specify in his receipt the terms upon which he undertakes to carry such property. This the defendant, by its agent, did in this case. The defendant was not bound to take the oil when it was offered to it by the Lake Shore and Michigan Southern Railway Co., except upon the terms prescribed by it, and the said Lake Shore and M. S. Railway Co. having the possession of said property to be forwarded from Buffalo, was certainly the agent and trustee for the plaintiffs for such delivery and to receive such receipt as the defendant was willing to give and was accustomed to give for such property. The receipt when given and received would inure to the benefit of the plaintiffs. It is not necessary, I think, to hold that the Lake Shore

and M. S. Co. had power to make any specific contract with the defendant for the transportation of said freight on its road. Its contract and duty was discharged on the delivery to and receipt by the defendant of the freight. But the defendant had a right to fix and prescribe the terms upon which it would receive and transport said oil, and did so in the receipt given. In this connection I think the offer of defendant's counsel to prove that the general custom — the universal custom of the defendant in reference to receiving oil as to fire and leakage — may properly be considered.

This offer, as understood I presume at the time, was in substance to show that it had been and was the universal practice or custom of the defendant to receive this kind of oil for transportation at the risk of the owner in respect to fire and leakage. This I think was proper evidence — not perhaps to show a particular custom, but to establish that the defendant did not undertake to carry this kind of freight or to hold itself out to the public as a common carrier of this species of property at its own risk in the respects mentioned.

Common carriers, like other men, may make their own contracts so far as they do not contravene the public policy. A carrier of passengers is not obliged to carry freight, and a carrier of particular kinds or descriptions of freight is not obliged to carry any other. He is only obliged to carry such freight as he holds himself out for and proclaims and professes himself ready and willing to carry, and he may prescribe the terms, regulations and rules within reasonable limits, upon which he will carry such freight.

A general common carrier may refuse to carry freight for which he has not accommodation, or which he thinks hazardous and dangerous. He may refuse to carry gun-powder, nitro-glycerine, petroleum, or the products of petroleum, naphtha, benzine and benzole, or he may stipulate as to the manner, times and mode, and risks attendant upon the receipt and transportation of such explosive and combustible articles.

If the N. Y. Central & Hudson River R. R. Co. had not held itself out as a carrier of such articles as ordinary freight, if it had uniformly refused to carry them as such, and had notoriously restricted its obligations as a common carrier, and had only carried them in a uniform way, and at the risk of the owner as to leakage and fire, I do not think it was inadmissible to prove that fact. The proof was admissible to show the nature and character of its contract with the

Hinkley v. New York Central and Hudson River Railroad Co.

public as common carrier in that respect, and as a limitation, perhaps, of its otherwise unlimited duty to carry all property offered to it fer transportation.

I do not think it is any answer to this view that the plaintiffs did not or might not know of this custom of the defendant. If the plaintiffs had accompanied their property to Buffalo, they would then, doubtless, have taken the receipt in question in person, and have learned the terms upon which the defendant received and transported such property. They could not, by sending their property by other carriers to the defendant's depot at Buffalo, deprive it of the right, when it received such property, to state and fix in its receipt therefor, the terms and conditions on which it received the same, or impose upon it the duty to receive and transport the same otherwise than in accordance with its uniform custom and practice in respect to such property.

The validity of the contract contained in the receipt that owners took the risk of fire and leakage in respect to the oil is assumed and admitted in *Babcock* v. *L. M. & M. S. R. R. Co.*, 49 N. Y. 491, and in *Camden & Amboy R. R. Co.* v. *Forsyth*, 61 Penn. St. 86.

In the case of *Babcock* v. *L. & L. & S. M. R. R. Co.*, *supra*, the defendants had received the property unqualifiedly, and the court held they took it subject to their ordinary common-law liability because "they received it without a special contract."

If the defendant could have shown, under its offer, that since the discovery of petroleum it had uniformly treated it as hazardous freight and had refused to carry it only upon particular contract as to the risk attending its transportation from fire and leakage, and otherwise, I think it should be presumed, if need be, that the plaintiffs were apprised of such custom or practice, and that in shipping their oil they acted in reference thereto and assented to such restriction of the defendant's general liability as a common carrier as is specified in said receipt.

The judgment should be reversed and a new trial granted, with costs to abide the event.

*Judgment reversed and new trial granted.*