George E. Jennings et al., Respondents, *v.* The Grand Trunk Railway of Canada, Appellant.

A limitation of the common-law liability of a carrier is dependent upon a special contract to that effect and the burden of proving this is upon the carrier. The language of the contract must fairly require such a construction without the aid of implication.

A provision in the contract to the effect that the carrier will not be responsible for delay in the transit of the property, will not relieve him from the consequences of delay occasioned by negligence; to constitute such an exception it must be expressly stated in the contract.

*It seems* a common carrier may by contract with a shipper provide for a reasonable time within which notice of claim for loss or damage shall be given and the manner of giving it, as a condition of liability.

*It seems* that ordinarily a person authorized to deliver and delivering the property of another to a common carrier for shipment, may be treated by the latter as having authority to stipulate for and accept the terms of affreightment, and as against the carrier the owner is bound by them.

*It seems* a common carrier who has received goods consigned to a place beyond the terminus of his route, is bound only to diligently convey them to such terminus and deliver them to the connecting carrier, unless he has contracted to transport them further.

Where, however, the carrier contracts to transport the goods to the place of destination, unless relieved by some limitation of liability in his contract, he is responsible for the consequences of any default or want of reasonable diligence on the part of the carrier on any part of the route.

Defendant contracted to transport several car loads of potatoes from certain points on its line to the place of destination, which was beyond that line, at a price fixed, of which defendant's station agents were advised. The persons who delivered the potatoes on the part of S. & Co., the shippers, signed shipping bills made out on blanks kept by defendant for

that purpose, and filled out by its agents in conformity with its general requirement and custom on receipt of goods for transportation. The shipping bills purported to be requests on the part of the persons signing them that the defendant receive the property, addressed to the consignees, subject to the terms and conditions stated in or upon the shipping bills. These limited defendant's common-law liability in various particulars. S. & Co. had no knowledge of the shipping bills and did not expressly authorize their agents, who delivered the property, to execute them; they, however, knew it to be the general custom of railroad companies, upon delivery of goods for transportation, to require shipping bills containing the terms and conditions of shipment. In an action to recover damages for the non-delivery of one carload of potatoes and for damages alleged to have been caused by delay in the delivery of the others, *held*, that conceding it to have been within the presumed authority of those who delivered the potatoes to make or accept stipulations or conditions for the reception and carriage of the property, beyond that, so far as it was dependent upon such presumption of authority, the owners were not necessarily bound by anything contained in the shipping bills; that the provisions therein, so far as they may be otherwise construed, were not applicable to the shipments in question; and, therefore, only the terms and conditions, so far as reasonable and applicable to through transportation, were to be deemed within the terms of the contract.

One of the conditions in the shipping bills was to the effect that no claim for loss or detention shall be allowed unless notice in writing and particulars of the claim be " given to station freight agent at or nearest to the place of delivery within thirty-six hours after the goods, in respect to which said claim is made, are delivered." *Held*, that this provision was applicable to shipments beyond the terminus of defendant's railway; but that in view of the nature of the property and of the claim for damages, the time specified was unreasonable; and so, was not applicable to the shipments in question; and that a failure to give such a notice was not a bar to a recovery.

Reported below, 52 Hun, 227.

(Argued June 10, 1891; decided October 6, 1891.)

APPEAL from judgment of the General Term of the Supreme Court in the fifth judicial department, entered upon an order made March 26, 1889, which affirmed a judgment in favor of plaintiffs entered upon the report of a referee.

For shipment and transportation to East St. Louis, Illinois, J. H. Shanley & Co. caused to be delivered to the defendant and the latter received potatoes at the time, places

and in the quantities following : April 18, 1881, at Prescott, Canada, 401 bushels; April 18, 1881, at Edwardsburgh, Canada, 812 bushels ; April 18, 1881, at Brockville, Canada, 400 bushels ; April 20, 1881, at Brockville, Canada, 400 bushels ; April 26, 1881, at Kingston, Canada, 402 bushels. The potatoes belonged to J. H. Shanley & Co., who were named as consignees of all the potatoes except those delivered to the defendant at Prescott. They were consigned to the order of the Merchants' Bank of Canada with directions to advise Shanley & Co. And all the potatoes reached the place of destination except those shipped at Prescott. They did not arrive there. The purpose of the action was to recover damages alleged to have been sustained by the negligence of the defendant in its failure to transport those last mentioned to the place of destination and for their loss in consequence, and in delaying the delivery at East St. Louis of those which did not reach there, by reason whereof the potatoes were injured and a further loss was sustained because the market price had fallen when they did arrive at that place. The claim of Shanley & Co. against the defendant was assigned to the plaintiffs. The referee found the following facts in support of it, and directed judgment against the defendant :

The defendant's railway is within the Dominion of Canada, of which it is a corporation. Its most westerly station is Point Edward, but its practical western terminus is at Fort Gratiot in the state of Michigan, where connection is made with other railroads extending west.

On February 8, 1881, Shanley & Co. wrote a letter to the defendant's agent at Toronto requiring the lowest rates for shipment of potatoes in carload lots from Prescott and other stations in that vicinity on its railway to East St. Louis, Illinois, and certain other places, and on the twelfth of that month received answer by letter from the defendant's assistant general freight agent saying : " I will give you the following rates on potatoes in full carloads from Prescott and stations in the vicinity to East St. Louis, 28 cents. Be good enough to let me know if these rates are accepted before shipping, so

that I may advise our agents." The rates so given were for each 100 pounds. On or before April 18, 1881, Shanley & Co. duly accepted such rates and notified such assistant general freight agent of such acceptance, who, on or prior to that day, so advised defendant's local freight agents at Prescott and stations in that vicinity. No notice was given to Shanley & Co. by the defendant or any of its agents that the defendant would not assume the duties and liabilities imposed by law upon common carriers in the shipment of potatoes and their transportation between the points and for the rates mentioned. The alleged defense is that the defendant was not chargeable with the consequences of delay or negligence in the transportation of the potatoes beyond its own railway line ; that there were certain limitations in the contract of affreighment which relieved it from liability, and certain conditions precedent which the plaintiffs' assignors failed to observe. And to support its defense the defendant put in evidence shipping bills termed therein shipping notes similar in form, one of which was as follows :

" GRAND TRUNK RAILWAY COMPANY OF CANADA.

" This company will not be responsible for any goods missent, unless they are consigned to a station on their railway. Rates, weights and quantities entered on receipts are not binding on the company, and will not be acknowledged. All goods going to or coming from the United States will be subject to customs charges, etc.

" PRESCOTT, Date *April* 18, 1881.

" The GRAND TRUNK RAILWAY COMPANY OF CANADA will please receive the under-mentioned property, in apparent good order, addressed to J. H. Shanley & Co., East St. Louis, Ill., to be sent by the said company, subject to the terms and conditions stated above and on the other side, and which are agreed to by this shipping note, delivered to said company as the basis upon which their receipt is to be given for said property.

Statement of case.

| No. of Packages and Species of Goods. | Marks. | Weight, lbs. | Paid on. |
|---|---|---|---|
| | | 24000 | |
| 1   Car potatoes, said to contain 400 bushels, in bulk, O. Risk.   Car 8679. | G. T. | | |

Via Chi. and Alton R. R.

19.42

80.58
___

100 00

J. E. Du BRULE, *Consignor.*"

Amongst the terms and conditions on the other side of this paper were the following :

"GENERAL NOTICES AND CONDITIONS ON CARRIAGE.

"1. It is agreed and understood that the Grand Trunk Railway Co. of Canada will not be responsible for goods of any kind conveyed upon this railway unless receipted for by a duly authorized agent of the company.

"3. Nor will the company be liable for damages occasioned by delays caused by storms, accidents, over pressure of freight or unavoidable causes, or by the weather, wet, fire, heat, frost or delay of perishable articles or from civil commotion.

"5. And in all cases where herein not otherwise provided the delivery of goods shall be considered complete and the responsibility of the company shall terminate when the goods are placed in the company's sheds or warehouse (if there be conveniences for receiving the same) at their final destination, or when the goods shall have arrived at the place to be reached on said company's railway.

"6. Lumber, coals, bricks and all other goods carried by the carload shall be taken as delivered and the company's responsibility in respect thereof shall cease, upon the car in which they are carried being detached from the train at the station on the company's line, to which it is consigned or at the station where in the usual course of business it leaves the company's line.

" 10. That all goods addressed to consignees at points beyond the places at which the company has stations, and respecting which no direction to the contrary shall have been received at those stations, will be forwarded to their destination by public carrier or otherwise, as opportunity may offer, without any claim for delay against the company for want of opportunity to forward them ; or they may, at the discretion of the company, be suffered to remain on the company's premises, or be placed in shed or warehouse (if there be such convenience for receiving same) pending communication with consignees, at the risk of the owners as to damage thereto from any cause whatsoever. But the delivery of the goods by the company will be considered complete, and all responsibility of said company shall cease, when such other carriers shall have received notice that said company is prepared to deliver to them the said goods for further conveyance ; and it is expressly declared and agreed that the said Grand Trunk Railway Company shall not be responsible for any loss, misdelivery, damage or detention that may happen to goods so sent by them, if such loss, mis-delivery, damage or detention occur after the said goods arrive at said stations or places on their lines nearest to the points or places which they are consigned to, or beyond their said limits.

" 11. That all property contracted for at a through rate, or otherwise, to or from places beyond the line of the Grand Trunk Railway, if shipped by water, shall, while not on the company's railway, or in their sheds or warehouses, be entirely at their owner's risk. In case of loss or damage to any goods for which this company or connecting lines may be liable, it is agreed that the company or line so liable shall have the benefit of any insurance affected by, or for account of the owner of said goods, and the company so liable shall be subrogated in such rights before any demand shall be made on them.

" 12. That no claim for damage to, loss or detention of any goods for which this company is accountable, shall be allowed unless notice in writing, and particulars of the claim for said

loss, damage, or detention are given to station freight agent at or nearest to the place of delivery, within 36 hours after the goods, in respect to which said claim is made, are delivered.

"13. Storage will be charged on all freight remaining in the company's sheds or warehouses over 24 hours after its arrival.

"15. That the company shall not in any case, or under any circumstances, be liable for loss of market, nor will they be liable for claims arising from delay or detention of any train in the course of its journey, or at any of the stations on the way or in starting; and the company do not undertake to load or send goods upon, or by any particular train, if there be an insufficient number of cars at any station, or that the cars cannot be conveniently used for the purpose, or if from any cause cars loaded at a station are unable to be sent on by trains passing or starting from such station."

These shipping bills were signed by or in the name of the person who delivered the potatoes to the defendant for Shanley & Co. and the defendant's station agents gave receipts to such persons; none of the receipts were produced in evidence, nor were their contents proved.

Further facts appear in the opinion.

*E. C. Sprague* for appellant. Plaintiffs are bound by the terms of the shipping bills delivered by the shippers to the defendant, and the referee erred in refusing so to find. (*Meyers* v. *Express Co.*, 24 How. Pr. 290; *Moriarty* v. *H. E. Co.*, 1 Daly, 227.) The defendant is absolved from liability for negligence by reason of the terms and conditions indorsed upon the shipping bills. (*Platt* v. *R. Y. R. & C. R. R. Co.*, 108 N. Y. 358.) The defendant is not liable under the provision of the shipping bills as to notice of claim. No notice in writing and the particulars of the claim for loss, damages or detention was given to the station agent at the place of delivery within thirty-six hours after the delivery of the goods. (*Hirschberg* v. *Dinsmore*, 67 How. [U. S.] 103; *E. Co.* v. *Caldwell*, 21 Wall. 264; *Lewis* v. *G. W. R. R. Co.*, 5 H. & N.

867.)  No special consideration for the execution of the shipping bill need be shown.  (*Faulkner* v. *Fargo*, 55 N. Y. 642 ; *Huntingdon* v. *Dinsmore*, 6 T. & C. 195 ; *Belger* v. *Dinsmore*, 51 N. Y. 166 ; *Kirkland* v. *Dinsmore*, 62 id. 171 ; *Coffin* v. *N. Y. C. R. R. Co.*, 64 Barb. 379 ; *M. O. Co.* v. *C., etc., R. R. Co.*, 54 N. Y. 197.)  The shippers in this case were bound by the special contract, unless there is ample proof that the persons making it, or in their behalf, had no authority to do so.  (*Meyer* v. *E. Co.*, 24 How. Pr. 290 ; *Moriarty* v. *Harnden*, 1 Daly, 227.)  Delivery to a succeeding carrier as a general proposition, exonerates the first carrier from further liability.  (3 Wood on Railways, 1575, § 425 ; *Weil* v. *M., etc., Co.*, 7 Daly, 456.)  In case of discrepancy between bills of lading held by the carrier and the shipper, the shipper is bound by the terms of the bills of lading delivered to and accepted by him.  (*Bishop* v. *E., etc., Co.*, 48 How. Pr. 119.)  Parol evidence of telegrams was admissible, because they were beyond the jurisdiction of the court.  (*Tucker* v. *Woolsey*, 6 Lans. 482 ; *Burton* v. *Driggs*, 20 Wall. 125, 134 ; 50 Conn. 272 ; *Beattie* v. *Hilliard*, 55 N. H. 428 ; *Roosevelt* v. *Eckard*, 17 Abb. [N. C.] 58 ; *Grover* v. *Morris*, 73 N. Y. 473.)

*Martin W. Cooke* for respondents.

BRADLEY, J.  The place to which the potatoes were consigned was beyond the line of the defendant's railway, and unless it had contracted to transport them further than the western terminus of its road, the duty of the defendant required it only to diligently convey the potatoes to that point and there deliver them to the connecting carrier.  (*Rawson* v. *Holland*, 59 N. Y. 611.)

But the conclusion of the referee was that the defendant undertook to deliver the potatoes at East St. Louis.  If that proposition is supported, the defendant was responsible for the consequences of any default or want of reasonable diligence in that respect on any part of the route, unless relieved by some limitation of liability in the contract of affreightment.

(*Root* v. *Great Western R. R. Co.*, 45 N. Y. 524; *Condict* v. *Grand Trunk R. Co.*, 54 id. 500; 4 Lans. 106.) The communications had between Shanley & Co., the plaintiffs' assignors, and the defendant's freight agent on the subject had relation to through rates for transportation of the potatoes for Shanley & Co. from the places where they were afterwards delivered to and received by the defendant to East St. Louis. The rates for such purpose were given and accepted. The defendant's station agents at the places of shipment were by the direction of the freight agent advised of the rates. And the potatoes were delivered, and in carload lots shipped, consigned to such place of destination. They belonged to Shanley & Co., of which the station agents were also informed at the time of the delivery for shipment. The defendant's railway then had the means of connection at Fort Gratiot and Detroit with trunk lines of railroad running westerly to Chicago and St. Louis. Although the question whether what had occurred between Shanley & Co. and the defendant's agent constituted an agreement for through transportation was not free from doubt, the finding was justified that it was such that the unqualified delivery and acceptance of the potatoes may have been treated as in pursuance of a contract to transport them to the place of destination. And in view of the facts and circumstances furnished by the evidence, the conclusion of the referee was warranted that in such event there was an undertaking of the defendant to transport the potatoes to that place, unless the contract so represented was modified by some further arrangement. (*Quimby* v. *Vanderbilt*, 17 N. Y. 306; *Toledo, etc., Ry. Co.* v. *Merriman*, 52 Ill. 123; 4 Am. R. 590.) Upon that subject our attention is called to the shipping bills executed by the persons who performed the act of delivering the property, and to the receipts or bills of lading given to them by the defendant's station agents. As a general rule, the bill of lading given by a carrier to and accepted by the shipper of goods contains the contract for carriage, and in the absence of fraud, imposition or mistake, the parties are concluded by its terms as there expressed. (*Long* v. *N. Y. C.*

*R. R. Co.*, 50 N. Y. 76; *Kirkland* v. *Dinsmore*, 62 id. 171; *Hill* v. *Syracuse, etc., R. R. Co.*, 73 id. 351.)

In this instance the receipts or bills of lading of all the potatoes which reached the place of destination, were there delivered up to the agent of the railroad company from whose custody the property was taken by the consignees. They were not produced at the trial, nor were their contents proved. The shipping bills or notes purport to have been requests of the persons subscribing them that the defendant receive the property addressed to the consignees " to be sent by the said company subject to the terms and conditions stated above and on the other side, and which are agreed to by this shipping note delivered to the company as the basis upon which their receipt is to be given for said property." Shanley & Co. had no knowledge of the making of the shipping bills, nor did they authorize the execution of them, unless it came within the power incident to the direction given to deliver the property for shipment. It seems that Shanley & Co. purchased the potatoes and directed their delivery at the defendant's stations by the persons who delivered or caused them to be taken there for such purpose.

Ordinarily a person authorized to deliver and delivering the property of another to a common carrier for shipment may by the latter be treated as having authority to stipulate for and accept the terms of affreightment, and as against the carrier the owner is bound by them. (*Nelson* v. *Hudson River R. R. Co.*, 48 N. Y. 498; *Shelton* v. *Merchants' Dispatch & Trans. Co.*, 59 id. 258.) The limitation of the common-law responsibility of the defendant depended upon a special contract to that effect. And the burden of proving such contract was with the defendant. To do this, the shipping bills taken and retained by it were produced. On the back of each of these were twenty-one numbered provisions in fine print. Of these bills it may be assumed that Shanley & Co. had no personal knowledge until they were produced at the trial. They were upon printed blanks kept for the purpose by the defendant, and the referee found that they were made "in conformity with the

general requirement or custom of the defendant on the receipt of goods for transportation;" and that Shanley & Co. "then knew it to be the universal custom of railroad companies, so far as their experience went, to require shipping bills to be executed by the shipper containing the terms and conditions of shipment upon the delivery of potatoes or similar goods to such companies for transportation." It appears by those bills that the giving of receipts by the defendant's agent was then contemplated. And the referee found that the defendant's receipts or bills of lading containing some terms and conditions for the transportation of the potatoes were so given, but that no evidence was offered to prove what those terms and conditions were. The contents of those papers constituted in part at least the contract, and for the complete proof of it they would seem to have been essential. It evidently was for that reason that defendant's counsel requested the referee to find, which he did, that the contracts executed and delivered by the defendant at the time of the shipment of the potatoes had not been proved, and thereupon insisted that without proving them the plaintiffs were not entitled to recover. There is no legal presumption to the prejudice of the plaintiffs arising out of the fact that receipts or bills of lading were given so far as relates to the contract. Those papers had, however, been delivered up at the place and time of the receipt of the property, and it may be assumed that they were accessible to the defendant. The question arises as to the effect of the terms and conditions of the shipping bills upon the rights of the plaintiffs, and to what extent they operate to relieve the defendant from its common-law duty, and this may depend somewhat upon the authority which the defendant had the right to treat as possessed by the persons signing those bills at the time they were made. Inasmuch as no conditions were mentioned in connection with the information given by the freight agent of the through rates for which the defendant would transport the property, it may be that Shanley & Co. supposed that the common-law duty would be assumed by the defendant as such carrier, and that would have been the situa-

tion if no special terms had been provided for when the property was delivered to the defendant. And although Shanley & Co. had not undertaken to furnish the property for shipment, they had the right to assume, unless advised to the contrary, that when delivered for that purpose it was received pursuant to the arrangement before then made so far as related to the rates and the through transportation. And, consistently only with such previous understanding or agreement, the defendant was permitted to treat it as within the authority of the persons who delivered the potatoes, to make or accept stipulations or conditions for the reception and carriage of the property by it, and beyond that the owners were not necessarily bound by anything contained in the shipping bills so far as it was dependent merely upon the presumption of authority of the persons executing them. Treating, as we do upon the facts found, the defendant's contract as one for transportation of the property to the place of destination, the provisions and conditions upon the shipping bills, so far as they may be otherwise construed, are not applicable to the shipments in question. (*Riley* v. *N. Y., L. E. & W. R. R. Co.*, 34 Hun, 97; *Babcock* v. *L. S. & M. S. Ry. Co.*, 49 N. Y. 491; *Condict* v. *G. T. Ry. Co.*, 54 id. 500.) The conclusion was permitted that not only did Shanley & Co. have no knowledge of the shipping bills, but that the receipts or bills of lading did not come to them until the potatoes were shipped and had gone forward. They were, therefore, not necessarily charged with any of the terms and conditions (whatever they were) of the bills of lading other than such as the defendant was at liberty to treat as within the authority of the persons receiving them to accept in behalf of the owners of the property. (*Coffin* v. *N. Y. C. & H. R. R. R. Co.*, 64 Barb. 379; 56 N. Y. 632; *Bostwick* v. *Baltimore & O. R. R. Co.*, 45 id. 712; *Germania F. Ins. Co.* v. *M. & C. R. R. Co.*, 72 id. 90; *Guillaume* v. *General T. Co.*, 100 id. 491; *Swift* v. *Pacific, etc., Co.*, 106 id. 206; *Park* v. *Preston*, 108 id. 434.) And to that extent, and that only, the terms and conditions of the shipping bills, so far as reasonable and applicable to through

transportation of the property by the defendant, must, for that purpose, be deemed within the contract. But limitation of the common-law liability of the carrier is dependent upon language in the contract fairly requiring such construction without the aid of implication. The provisions to the effect that the defendant would not be responsible for delay in the transit of the property did not have the effect to relieve it from the consequences of delay occasioned by its negligence, as exemption from liability for that cause was not expressed in the contract. (*Magnin* v. *Dinsmore*, 56 N. Y. 168; *Mynard* v. *Syracuse, etc., R. R. Co.*, 71 id. 180; *Nicholas* v. *N. Y. C., etc., R. R. Co.*, 89 id. 370.) There was evidence upon the subject, and by it was supported the finding of the referee that the loss suffered and the damages sustained by the plaintiffs' assignors were caused by the defendant's negligence in transporting the potatoes. Amongst the terms and conditions on the back of the shipping bills, was one numbered 12, which provided "that no claim for damage to, loss of or detention of any goods for which this company is accountable shall be allowed unless notice in writing and particulars of the claim for said loss, damage or detention are given to station freight agent at or nearest to the place of delivery within thirty-six hours after the goods in respect to which said claim is made are delivered." No such notice was given. The referee refused to give effect to it upon the request of the defendant's counsel and exception was taken. The view of the referee was that this provision was not applicable to shipments beyond the terminus of the defendant's railway. The place of delivery was East St. Louis; and the same reason for the requirement of the notice when the place of delivery by the defendant is beyond its own line of road exists for it as when such place is on its railway. The purpose of the notice evidently was to enable the carrier to investigate the nature, cause and extent of the injury or damages claimed, with a view to the means of the protection which such opportunity may afford. It is the accountability of the defendant for damages that renders the notice essential, and by

the terms of the clause in question no other condition is required. It is true that other clauses are to the effect that the defendant should not be responsible beyond its own railway for goods passing over it and from it on to other roads, but it is contemplated that its cars containing goods might go forward on connecting railroads to the place of destination. It is not seen how that fact can qualify or limit the purpose of the notice. The delivery in view is to the consignee. This can be done only at the place to which the goods are consigned. Before delivery there he may not be supposed to have either the opportunity or means of giving the notice.

It is legitimate for a common carrier by contract with the shipper to provide for a reasonable time within which notice of claim for loss or damage shall be given as a condition of liability and the manner of giving it. (*Express Co.* v. *Caldwell*, 21 Wall. 264; *Southern Express Co.* v. *Hunnicutt*, 54 Miss. 566; 28 Am. R. 385; *Lewis* v. *Great Western Ry. Co.*, 5 Hurl. & Norm. 867.) In those cases the notices provided for were held to be reasonable, and that question is an open one for consideration. (*Westcott* v. *Fargo*, 61 N. Y. 542, 551; *Adams Express Co.* v. *Reagan*, 29 Ind. 21; 92 Am. Dec. 332.) In the present case each car contained four hundred bushels and upwards of potatoes. The time in which the condition required notice to be given might not include more than twelve business hours to ascertain the requisite particulars of the claim for the purpose of the notice. It is easy to see that the specified time of thirty-six hours would be inadequate to the necessity that might exist in a case like the one under consideration. The conclusion was permitted that in view of the character and extent of the property and the nature of the claim for damages, which might and did arise, the time specified within which to give notice with particulars was quite unreasonable; and, therefore, and for that reason the condition in that respect was inapplicable to the shipments in question, and the failure to give such notice was no bar to the remedy.

This view renders it unnecessary in the consideration of the

effect of such condition to refer further to the circumstances under which the shipping bills were made in view of the fact that it does not appear that the condition was in the bill of lading. No other question seems to require the expression of consideration.

The judgment should be affirmed.

All concur, FOLLETT, Ch. J., in result.

Judgment affirmed.