from a distance, not to mention the general labor of preparing for trial, none of which could be safely omitted where reliance was placed upon the customary and time-honored method of making such a motion at the trial, because the courts almost as a matter of course .deny such motions when made at the trial, or at least reserve decision thereon and go into the case upon the merits and take all the proofs.

The plaintiff's attorney insists that under a stipulation not to demur to the complaint the moving defendant is precluded from making this motion; but it is apparent, not only from the language of the stipulation, which expressly reserves to the several defendants "the right to raise such questions to the complaint, either before or upon the trial of this action, as to either of them may seem proper," but also from the affidavits submitted, that the defendant in no wise bound himself against making this motion.

Passing now to a consideration of the sufficiency of the complaint, it is found that, so far as concerns a justification for abandoning the further and complete performance of the contract in suit on the plaintiff's part, the complaint is still open to the objection pointed out when it was before the Appellate Division upon demurrer. Some amendments have been made, but they do not cure the defect referred to. There is, to be sure, an allegation that at the date when the plaintiff discontinued further performance "the work performed and materials furnished by the plaintiff theretofore, as aforesaid, which had not then been paid for, were of the total reasonable value of $41.605.31"; but the contract is not annexed to the complaint, nor is it shown what its terms were as to the payment of installments as the work progressed, nor is it even averred what amount was paid. As was said by the Appellate Division when the original complaint was before them, the allegation that the defendant Murray failed to make payment to the plaintiff due to him is a mere conclusion of law, with no facts stated to sustain it, citing Tate v. Am. Woolen Co., 114 App. Div. 106, 99 N. Y. Supp. 678. So far as concerns the question of substantial performance, the complaint in its present form contains the same defect as when it was before the Appellate Division.

The motion should be granted, with $10 costs.

---

(128 App. Div. 171.)

HACHADOORIAN v. LOUISVILLE & N. R. CO.

(Supreme Court, Appellate Division, Second Department. October 22, 1908.)

1. CARRIERS (§ 173*)—CARRIAGE OF GOODS — CONNECTING CARRIERS — THROUGH CONTRACTS—WHO MAY TAKE ADVANTAGE OF.

Carriers who are not named in a contract for the carriage of goods, and who are not formal parties thereto, may have the benefit of it, where the contract is made by one of several carriers on connecting lines for the carriage of goods over the several routes for an agreed price, pursuant to express or implied authority, or where, in the absence of any authority, the contract by one carrier is adopted and acted on by the other carriers.

[Ed. Note.—For other cases, see Carriers, Dec. Dig. § 173.*]

2. CARRIERS (§ 171*)—CARRIAGE OF GOODS—CONNECTING CARRIERS—CONTRACTS
—RATIFICATION BY SHIPPER.

A contract between the initial and connecting carriers is deemed to have been made for the benefit of the one arranging for a through shipment of goods, and the contract is ratified by the shipper bringing suit.

[Ed. Note.—For other cases, see Carriers, Dec. Dig. 171.*]

3. CARRIERS (§ 173*)—CARRIAGE OF FREIGHT—CONNECTING CARRIERS—THROUGH BILL OF LADING—PERSONS BOUND.

A contract made in New York for the through carriage of goods to the shipper as consignee is binding on the shipper and a connecting carrier so far as they undertake to perform it.

[Ed. Note.—For other cases, see Carriers, Dec. Dig. § 173.*]

4. CARRIERS (§ 110*)—CARRIAGE OF FREIGHT—CONNECTING CARRIERS—BILL OF LADING—LOSS OF GOODS NOT MENTIONED.

A shipper, in a contract for the through shipment of freight described as a secondhand desk, which provides that no carrier shall be liable for any article not specifically rated, etc., cannot, in the absence of fraud perpetrated on him, recover from a connecting carrier for the loss of jewelry, wearing apparel, etc.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 497–500; Dec. Dig. § 110.*]

Appeal from Trial Term.

Action by Gargos Hachadoorian against the Louisville & Nashville Railroad Company. From a judgment granting a nonsuit, plaintiff appeals. Affirmed.

Argued before WOODWORD, JENKS, HOOKER, GAYNOR, and RICH, JJ.

Martin T. Manton, for appellant.

Hugh A. Bayne, for respondent.

WOODWARD, J. On the 12th day of September, 1903, the plaintiff in this action delivered to the Old Dominion Steamship Company in the city of New York a certain package, consigned to himself at St. Louis, which package is alleged to have contained a secondhand desk, and accepted from the receiving clerk of the Old Dominion Line a bill of lading describing the package as a secondhand desk. The bill of lading receipts for the secondhand desk, and for the payment of $1.39 as the freight charges on the same—

"to be transported by the steamer or vessel that may be named in this bill of lading, or by any other steamer or vessel, whether belonging to said corporation or any other owner, to said destination, if on its own line, or otherwise to deliver to another carrier, on the route of said destination."

If the contract ended here, it might be claimed that its duties and obligations, as well as its exemptions, ceased on its delivery of the goods to the next carrier; but the contract continues:

"In consideration of the rate charged under the conditions of this bill of lading, it is mutually agreed as to each carrier severally, but not jointly, of all or any of said property over all or any portion of said route to destination, and as to each party at any time interested in all or any of said property, that every service to be performed hereunder shall be subject to all the conditions, whether printed or written, on the face or back hereof, all of which are agreed to by the shipper as owner, or agent for the owner, and accepted for himself or his assigns as just and reasonable. * * * No carrier

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

shall be liable for loss, damage or delay not occurring on its portion of the route, nor after said property is ready for delivery to connecting carriers or to consignee. The amount of any loss or damage for which any carrier becomes liable shall be computed at the value of the property at the place and time of shipment under this bill of lading, unless a lower value has been agreed upon or is determined by the classification upon which the rate is based, in either of which events such lower value shall be the maximum price to govern such computation. Claims for loss or damage must be made in writing to the agent at point of delivery promptly after arrival of the property, and if delayed for more than thirty days after the delivery of the property, or after due time for the delivery thereof, no carrier thereunder shall be liable in any event. * * * No carrier hereunder will carry or be liable in any way for any documents, specie, or for any article of extraordinary value not specifically rated in the published classifications, unless a special agreement to do so, and a stipulated value of the articles, are indorsed hereon. This bill of lading is signed for the different carriers who may engage in the transportation, severally, but not jointly, each of which is to be bound by and have the benefits of the provisions thereof, and in accepting this bill of lading the shipper, owner and consignee of the goods and the holder of this bill of lading agree to be bound by all of its stipulations, exceptions and conditions, whether printed or written."

It has been aptly said, by our highest court, that "good faith is written into every contract." The plaintiff in this action, by delivering his secondhand desk to the Old Dominion Line, and accepting the freight rate for secondhand furniture, would not be in a good position to claim damages for anything more, and in this action he does not claim any damages to the secondhand desk. What he now claims, and what he brings his action for, is to recover the value of three Persian shawls, valued at $600, one Persian rug, valued at $300, and a diamond ring valued at $300, which he claims constituted a part of the parcel. To permit the plaintiff to recover this value would result in a fraud upon the defendant, one of the connecting carriers, and the one having control of the goods at the time it is claimed these special articles were stolen. The learned court at the trial dismissed the complaint upon defendant's motion, and the plaintiff appeals.

The contract above set forth is a New York contract, providing for through transportation to St. Louis. The contract of the Old Dominion Line contemplates the entire transaction. It accepts the goods consigned to the shipper at St. Louis, takes the freight for the entire distance, and stipulates, for itself and connecting carriers, the conditions on which it is to perform the service. Its contract is to carry one secondhand desk from New York to St. Louis, and to deliver the same to the plaintiff, and this service has been performed. No claim is made that the desk was not transported according to the contract. The law is well established that carriers who are not named in a contract for the carriage of goods, and who are not formal parties to it, may, under certain circumstances, have the benefit of it. Such is the case when a contract is made by one of the several carriers upon connecting lines or routes for the carriage of property over the several routes for an agreed price by authority, express or implied, of all the carriers. So, too, in the absence of any authority in advance, or any usage from which an authority might be inferred, a contract by one carrier for the transportation of goods over its own and connecting lines, adopted and acted upon by the others carriers, would inure to

the benefit of all thus ratifying it and performing service under it. But in such and the like cases the contract has respect to and provides for the services of the carriers upon the connecting routes. Babcock v. L. S. & M. S. Railway Co., 49 N. Y. 491, 497, and authorities there cited; Faulkner v. Hart, 82 N. Y. 413, 422, 37 Am. Rep. 574. The contract between the first carrier and the connecting carriers is deemed to have been made for the shipper's benefit, and is ratified by bringing the suit. Green v. Clarke, 12 N. Y. 343. The contract, being made in New York, is binding upon the plaintiff, the shipper, who was, in this case, the consignee, and the defendant, the connecting carrier, so far as they undertook to perform it (Faulkner v. Hart, supra); and, as we have seen, the only contract between the parties was to carry a second-hand desk between New York and St. Louis, and to deliver the same to the plaintiff, who paid $1.39 for such service, and this service was performed under a contract which provided that:

"No carrier hereunder will carry or be liable in any way for any documents, specie, or for any article of extraordinary value not specifically rated in the published classifications, unless a special agreement to do so, and a stipulated value of the articles, are indorsed hereon."

There was no allegation of fraud in the complaint, and it was not competent, therefore, to show by evidence any of the alleged facts surrounding the making of this contract. The contract was in writing, and could not be varied by parol. It was a contract fair in its provisions, and it would be a gross perversion of justice to permit the plaintiff to recover for the value of the property which he claims was contained in this package, and which would, unquestionably, have demanded a much higher rate of freight.

This result is not in conflict with Babcock v. L. S. & M. S. Railway Co., 49 N. Y. 491, and Robinson v. N. Y. & Texas Steamship Co., 63 App. Div. 211, 71 N. Y. Supp. 424; for in each of these cases it appears clearly that there is no contract for exemptions extending beyond the service to be performed by the initial carrier, while in the case at bar the contract in terms provides for the liability of all carriers performing services under the contract. In the Robinson Case, supra, the court say, in speaking of the contract, that:

"No language is found therein which stipulates for any exemptions in favor of the defendant, or of any which inured to the benefit of the defendant company, and no exemption from liability as to it was in terms expressed therein."

In the Babcock Case, supra, as we have already pointed out, the court recognizes the rule in cases where the contract provides for the entire transaction, including the connecting carriers.

The judgment appealed from should be affirmed, with costs. All concur; RICH, J., in result.