The plaintiff owned a horse of considerable value, which he wished to send to Antwerp, N.Y. He *Page 462 
employed Coolidge as his agent for that purpose; who applied to the defendant at West Albany, N.Y., for a car, in which to effect the transportation. A contract was filled out and signed by Coolidge and the agent of the defendant. It was headed "Live Stock Contract of release and agreed valuation according to the official classification of the New York Central and Hudson River Railroad." It recited that the company transported live stock at certain prices "carrier's risk," and at reduced prices, upon certain risks being assumed by the shipper, and upon the condition that the property was valued as stated below. The contract then read: "Now in consideration that said company will transport at said reduced prices, one horse valued at not exceeding $100 * * * consigned to G.P. Coolidge at Antwerp, N.Y., it is * * * agreed that in the event of the loss, death or injury of the animals, or any of them, from causes which would make the carrier liable, such liability shall not, in any case, exceed an amount to be fixed according to the above valuation." A previous clause contained an agreement that the company should not be liable for any injuries from causes generally connected with the bad conduct of the animals; or in consequence of heat, or other ill effects from being crowded in cars or yards; or on account of burning of hay, straw, or other feeding material; nor was the company to be liable for any loss or damage sustained by reason of any delays, or of any insecurity of the cars. The loss of the horse occurred as the result of an accident. During the journey the engine, having been uncoupled to obtain coal and water, in backing down to the train, became unmanageable aud crashed into the car, in which Coolidge and his horse were; with the result of killing the horse. The owner brought this action to recover its alleged value of $5,000, and obtained a verdict for $3,100. The judgment upon the verdict has been reversed by the General Term, on the ground that the contract limited the recovery to $100, and interest thereon, and we think the reversal was correctly ordered. In view of the satisfactory opinion delivered at the General Term, we do not feel called upon to enter into an elaborate discussion *Page 463 
of the questions raised. It is the law of this state, as settled by many decisions of this court, that a common carrier may limit his liability by contract; and the contract may provide for immunity from the negligence of the carrier, or that of its agents; but where the latter object is sought to be accomplished, the contract must be aptly expressed and in unequivocal terms.Kenney v. Railroad Co., 125 N.Y. 425.
In this case the contract did not exempt the company from liability for the negligence, which, as we must assume, occasioned the loss of the horse. That occurred through none of the causes particularly specified in the contract, and nothing precluded the plaintiff from recovering upon the negligence proven; but the amount of his recovery was limited by the contract to the amount of $100. That the plaintiff did not know of the terms of this contract, is of no consequence. Coolidge was his agent, and will be presumed to have known and to have assented to the stipulation in the contract, which limited the general liability of the carrier. (Belger v. Dinsmore,51 N.Y. 166; Steers v. Steamship Company, 57 id. 1.) That presumption always holds good, unless some fraud, or deception, is practiced, which was not the fact in this case. There can be no question about the reasonableness of such a contract. It was based upon the consideration of a rate of transportation, far below what it would have been, if the carrier had assumed all the risks. It was entered into with full opportunity for ascertaining its terms, and it was incumbent upon the shipper, or owner, to acquaint himself with them, and if he has not done so, he will, nevertheless, be held chargeable with their knowledge. Cases where parties, proposing to have articles of property transported by a common carrier, deliberately enter into some necessary contract relating to the transportation, differ materially from those cases of travelers who commit their trunks, or articles of baggage, to an agent of some express or transfer company, and receive at the moment some paper, which, as it has been said, amounts simply to a voucher enabling them to follow and identify their property. (Madan v. Sherard, 73 N.Y. 329.) The difference *Page 464 
is very obvious in the circumstances, which, in the one case, usually admit of no negotiation, or discussion; while, in the other, the shipment of the property is a matter of arrangement, with full opportunity for deliberate action. In the case ofGrossman v. Dodd, lately affirmed by us on the opinion of the General Term of the first department (63 Hun, 324), where a traveller, landing from a steamship, delivered her trunk to an express company's agent, and received back a printed paper, bearing the somewhat imposing title of "Domestic Bill of Lading," the opinion of Justice O'BRIEN, at General Term, adverts to the distinction which should control in the application of the rule of presumption to contracts for the shipment of merchandise, and to such contracts as local express companies endeavor to force upon the passenger.
The appellant's counsel argues that this clause, limiting the liability of the company, does not refer to an injury, or death, which is occasioned by its negligence as a bailee; but we think the language is far too general in the clause itself to bear him out. The agreement of the company was to transport the horse at a reduced rate, upon the condition that its value should be as stated and we would fail to give adequate effect to the agreement and its consideration, if we should hold that the company had not limited the extent of its liability in all events.
For the reasons stated, we think the judgment recovered at the Circuit was properly reversed, and, therefore, under the stipulation, judgment absolute should be entered against the appellant, with costs to the respondent.
All concur, O'BRIEN, J., not sitting.
Judgment accordingly. *Page 465