Dora Wheeler, Appellant, *v.* The Oceanic Steam Navigation Company, Respondent.

*Action for lost merchandise baggage — condition on an ocean passenger ticket — failure to read the contract — acquiescence in the terms of the contract — property covered by the contract.*

On the trial of an action brought to recover the value of a case of portraits, delivered at Liverpool to the defendant for transportation to New York, and not accounted for by it, it appeared that about a week prior to August 26, 1886, a stateroom was engaged by plaintiff's mother for her party, which included the plaintiff, on the defendant's steamship, which was to sail from Liverpool to New York on August 26, 1886.  On August 24, 1886, the plaintiff arrived at Liverpool and inquired at the company's office as to whether it had received her three trunks and the box of portraits, to which she received a negative answer.  On August 25, 1886, the plaintiff's mother, with the plaintiff, proceeded to the office of the company, and, on making a similar inquiry for the packages, were informed that they had been received and had been placed upon the steamer.

The plaintiff's mother testified that she informed the agent on that occasion of the contents of the box, and thereupon she paid the passage money and received a ticket which embodied a contract, by the terms of which it was sought to limit the liability of the company for goods, including baggage, to an amount not exceeding ten pounds sterling.  The contract ticket, in large display type, stated that it was a " cabin passenger contract ticket," and a person looking at it could not fail to observe that it contained conditions and stipulations relating to the journey of the holder across the ocean.

It was conceded that plaintiff's mother, if not the plaintiff herself, had been accustomed to cross the ocean, and, in respect to the particular voyage, had arranged for and secured their passage at least a week ahead, and that the contract ticket was received by them a day before the vessel sailed.

*Held*, under the circumstances, that the receipt of the ticket, with the terms and conditions printed thereon, constituted a contract between the parties ;

That the failure of the plaintiff or her mother to read it was immaterial;

That the fact that the property was on board the ship, and it would have been impracticable to return it to the plaintiff before sailing, was no excuse for the plaintiff's silence or acquiescence if she had fault to find with the terms of the contract.

It further appeared that the portraits were contained in a box, which, from its appearance, unmistakably indicated something other than, and different from, the ordinary baggage of a traveler. There was no attempt to deceive the defendant as to its true character, or to make it appear to be personal baggage, or to shield it from the proper freight charges. It was not, however, entered upon the bill of lading with notice of its character and value or in any manner whatever, but was put in the hold of the vessel for transportation to New York. It was provided by the contract ticket that the company would carry passengers' luggage, for which a bill of lading was not signed, subject to the express stipulation that the company was not to be liable for the loss of any article or property, of the descriptions mentioned in the schedule, contained in any parcel or package, when the value of such article or property exceeded the sum of ten pounds sterling, unless at the time of the delivery thereof to the company the value thereof should have been declared by the person sending or delivering the same. The schedule enumerated, among other things, pictures.

*Held*, that the portraits contained in the box were included within the contract printed upon the ticket.

APPEAL by the plaintiff, Dora Wheeler, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the city and county of New York, after a trial at the New York Circuit, on the 18th day of October, 1892, upon a verdict rendered by direction of the court in favor of the plaintiff for the sum of sixty-six dollars.

*Boudinot Keith*, for the appellant.

*Everett P. Wheeler*, for the respondent.

O'BRIEN, P. J.:

This action was brought to recover the full value of a case of portraits executed in pastel by plaintiff, and by her delivered at Liverpool to the defendant for transportation to New York, and not accounted for by it.

About a week prior to August 26, 1886, the plaintiff's mother engaged a stateroom for the party, which included, besides the persons mentioned, another young lady, on the defendant's steamship *Germannic*, which was to sail from Liverpool for New York on the date named. Having previously caused to be shipped by freight from London her three trunks and the box of portraits, the plaintiff herself arrived at Liverpool on August twenty-fourth, and inquired at the company's offices as to whether it had received the articles, describing them, to which she received a negative answer. On the next day, being the one prior to the sailing of the vessel, the plaintiff's mother having arrived, she and the plaintiff together proceeded to the offices of the company and, upon making a similar inquiry for the packages, were informed that they had been received and that the company had placed them upon the steamer. On this occasion the mother testifies that she informed the agent of the contents of the box ; and thereupon she paid the passage money and received a ticket, which embodied a contract, by the terms of which, it was held in the court below, the plaintiff was bound. By the terms of such ticket it was sought to limit the liability of the company for goods, including baggage, to an amount not exceeding ten pounds sterling.

The two questions which we regard as crucial in determining the rights of the parties are : (1) Did the receipt of the ticket with the terms and conditions printed thereon constitute a contract between the parties ? and (2) Were the portraits contained in the box included within such contract ?

In *Zimmer* v. *N. Y. C. & H. R. R. R. Co.* (137 N. Y. 460), it was said (page 463) : " Cases where parties, proposing to have articles of property transported by a common carrier, deliberately enter into some necessary contract relating to the transportation, differ materially from those cases of travelers who commit their trunks or articles of baggage to an agent of some express or transfer company and receive at the moment some paper which, as it has been said, amounts simply to a voucher enabling them to follow and identify their property. The difference is very obvious in the circumstances which, in the one case, usually admit of no negotiation or discussion, while in the other the shipment of the property is a matter of arrangement, with full opportunity for deliberate action."

That and cases therein referred to are authority for the view that

one who receives a ticket with a contract written thereon would, under the former circumstances, be held to have entered into and assented to the terms of the contract, though he failed or neglected to read the same ; while under the latter, where opportunity for negotiation or discussion was not present, one who received a ticket or receipt for baggage which contained a contract would not be bound by the terms thereof, unless the same was brought home to the person sought to be bound. The question now presented is : Under which of these two classes is the present case to be assigned ? While a person undertaking a voyage across the ocean may not in every instance proceed with the same deliberation as one who desires to ship goods, it is still true that he proceeds with respect to making arrangements for such a journey with much more deliberation than usually attends the committing of himself or property to a common carrier upon the beginning or ending of a journey by land.

As said in *Steers* v. *Liverpool, etc., S. S. Co.* (57 N. Y. 5) : " Looking to the course of business, the court may take notice that an engagement for a voyage across the ocean is a matter of more deliberation and attention than buying a railroad ticket or taking an express company's receipt for baggage or for freight. There is, therefore, no room in such a case for the suggestion that the party is surprised into a contract, when he supposes himself only to be taking a token indicative of his right."

Although the circumstance as to whether the transaction is one merely of affreightment, or the purchase of a ticket upon a railroad, or the delivery of one's baggage to an express company, or the procuring of passage across the ocean, has a bearing and will shed light upon the question of whether a contract was or was not entered into, it will in each case have to be determined upon the surrounding facts and circumstances. Instances could be cited where the usual presumption that might arise in favor of or against the making of a contract limiting the liability of a common carrier would be entirely rebutted or destroyed by the other attending circumstances. So here the question is, whether by reason of the acceptance and use of the passage ticket the plaintiff is to be held to have assented to its terms.

The statement contained in the case of *Fonseca* v. *Cunard S. S. Co.* (153 Mass. 555), we think is equally good law in this State. As

therein said: "It has often been decided that one who accepts a contract and proceeds to avail himself of its provisions is bound by the stipulations and conditions expressed in it, whether he reads them or not. This rule is as applicable to contracts for the carriage of persons or property as to contracts of any other kind."

Here, as in that case, the precise question is: "Whether the contract ticket was of such a kind that the passenger taking it should have understood that it was a contract containing stipulations which would determine the rights of the parties in reference to his carriage. If so, he would be expected to read it, and if he failed to do so, he is bound by its stipulations. It covered with print and writing the greater part of two large quarto pages, and bore the signature of the defendant company, affixed by its agent, with a blank space for the signature of the passenger. The fact that it was not signed by the plaintiff is immaterial. It contained elaborate provisions in regard to the rights of the passenger on the voyage. * * * No one who could read could glance at it without seeing that it undertook expressly to prescribe the particulars which should govern the conduct of the parties until the passenger reached the port of destination. In that particular it was entirely unlike the pasteboard tickets which are commonly sold to passengers on railroads. In reference to this question the same rules of law apply to a contract to carry a passenger as to a contract for the transportation of goods. There is no reason why a consignor who is bound by the provisions of a bill of lading, which he accepts without reading, should not be equally bound by the terms of a contract in similar form to receive and transport him as a passenger."

It is conceded that the plaintiff's mother, if not the plaintiff herself, had been accustomed to cross the ocean, and in respect to this special voyage that they had arranged for and secured their passage at least a week ahead, and that the contract ticket was received by them a day before the vessel sailed. This contract ticket is quite a large and formidable looking paper, and in large display type states that it is "CABIN PASSENGER'S CONTRACT TICKET." So that one receiving and looking at it could not fail to observe that it contained conditions and stipulations relating to her journey across the ocean. The failure of the plaintiff or her mother, who acted in

conjunction with her, in not reading it, where, as here, the opportunity was present, would seemingly be immaterial. A reasonable time was afforded prior to the sailing of the vessel, and if any fault was to be found with the passenger contract the plaintiff or her mother should have made it known before leaving Liverpool.

It is suggested that it would then have been of no avail to protest, as the property was on board the ship and it would have been impracticable to return it to the plaintiff before sailing. This fact, however, we do not think is an excuse for the plaintiff's silence or acquiescence, if she had fault to find with the terms of the contract. In other words, had she demurred or objected, the obligation would have been upon defendant to return her property, or, failing to return it, not to have had the benefit of the terms of the contract ticket. The failure then to object, under the circumstances as they are made to appear in this case, must, we think, be held to be an assent by plaintiff to the terms and conditions of the contract ticket.

This being so, the remaining question is, whether it limited the liability of the defendant with respect to the portraits which were contained in the box and which were lost.

Upon this trial, as upon the former, it was made to appear that, in addition to the ordinary baggage contained in trunks, plaintiff delivered for transportation, as stated, a package of valuable portraits. In the words of Judge FINCH upon the former appeal in this case (125 N. Y. 155) : " These were contained in a box of white wood with iron hinges and corner clasps, and closed by a lock. The package itself, besides the address, was marked ' Studio,' and its appearance unmistakably indicated something other than and different from the ordinary baggage of a traveler. There was no attempt to deceive the defendant as to its true character, or by artifice or misrepresentation to make it appear to be personal baggage, or shield it as such from proper freight charges. Nevertheless it was not entered upon the bill of lading with notice of its character and value, or in any manner whatever, but was put in the hold of the vessel for transportation to New York."

By the contract ticket it was provided : " That the Company carries Passengers' Luggage and Goods for which a Bill of Lading is not signed, subject to the express stipulation : That it is not to be liable for the loss of, or injury to, any Article or Articles, or Prop-

erty, of the descriptions mentioned in the Schedule hereto, contained in any Parcel or Package, when the value of such Article or Articles, or Property, shall exceed the sum of £10, unless at the time of the delivery thereof to the Company the value thereof shall have been declared by the person or persons sending or delivering the same.   *   *   *   "

It will thus be seen by the terms of the contract that the limited liability of the company is not confined simply to baggage, but is sought to be extended to " any article or articles, or property, of the descriptions mentioned in the schedule " — which schedule enumerates, among other things, " Pictures."

The appellant's contention is, that this language would only refer to articles mentioned in the schedule which were packed with baggage, and the knowledge of which was kept from the company, and would not include portraits or pictures packed in a case, as here, and which it is claimed must necessarily have been received as freight, and for which, as such, defendant would be liable.

We do not think this position is tenable. This property was delivered at the same time as the trunks, and is by a particular description referred to in the contract ticket ; and where, as here, no bill of lading was taken out or asked for, and the value thereof was not stated, but the company was left to infer from the manner in which it was received that it was to be carried in the same way as any other property which a passenger might seek to bring with him, we think it would be extending the liability of the defendant beyond the terms of the express contract entered into between the parties to assume that it was a separate and independent contract under which the defendant unconditionally received the package as freight, and for which, as such, it would be liable. In other words, whether the property was what might, strictly speaking, be called baggage, or freight, and whether received as one or the other by the defendant, cannot be a controlling circumstance in a case where there is a contract which by its terms covered such property.

In *Stoneman* v. *Erie Ry. Co.* (52 N. Y. 433), Judge PECKHAM writing the opinion, says : " I think it is safe to say that if the carrier knew or had notice of the character of the goods taken as baggage, and still undertook to transport them, he is liable for their loss, although they are not traveler's baggage."

We think it to be equally a sound proposition that it was entirely competent for the defendant to carry the package containing the portraits, though from the way in which they were boxed it had knowledge that such package was not, strictly speaking, baggage, and to contract with the person owning such property as to the terms, conditions or limitations under which it would transport the same.

We think the evidence shows that there was no intention of separating this property from the baggage, or, on the part of the plaintiff, of placing any other or different responsibility upon the defendant from that assumed by it in carrying the trunks. But, on the contrary, the evidence is susceptible of but one conclusion, viz., that the trunks and the package containing the portraits, as well as their own transportation or passage, were intended by the parties to be, and were, the subject of a single contract.

It will thus be seen that we have reached the conclusions, with respect to both questions, that there was a contract entered into between the parties, which, by its terms, extended to and included the portraits, and under which the liability of the defendant was limited. And upon such conclusion it follows that the case was correctly disposed of by the judge at Circuit, and that the judgment should be affirmed, with costs to the respondent.

Follett and Parker, JJ., concurred.

Judgment affirmed, with costs to the respondent.