THEODORE TEWES, Respondent, *v.* NORTH GERMAN LLOYD STEAMSHIP COMPANY, Appellant.

COMMON CARRIER — STIPULATION IN OCEAN STEAMSHIP TICKET LIMITING LIABILITY FOR LOSS OF BAGGAGE — RECOVERY CONFINED TO STIPULATED AMOUNT.    A stipulation in a passage ticket for an ocean voyage limiting the amount for which the carrier shall be liable for loss or injury to baggage, unless a declaration of value in excess of that sum is made,

covers a loss of goods occasioned by negligence, although there is no express provision exempting the carrier from liability for its own negligence; and in the absence of such declaration a recovery must be limited to the stipulated amount.

*Tewes* v. *North German Lloyd S. S. Co.*, 104 App. Div. 619. reversed.

(Argued May 21, 1906; decided October 9, 1906.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the second judicial department, entered May 4, 1905, affirming a judgment in favor of plaintiff entered upon a verdict and an order denying a motion for a new trial.

This action was brought to recover damages for the loss of plaintiff's baggage, consisting of a trunk containing wearing apparel, which loss it is alleged was caused by the defendant's negligence.    The plaintiff is a resident of Long Island City, and on or about June 20th, 1900, purchased a ticket from the defendant entitling him to passage on the defendant's steamship *Grosser Kurfürst* from Hoboken, N. J., to Bremerhaven, Germany, to sail on June 28th following.    This ticket, which in its general features is in the usual form, contained the following provisions : " It is mutually agreed that this ticket is issued by the North German Lloyd S. S. Co. and accepted by the passenger on the following conditions :   *   *   *   It is also agreed that neither the shipowner, nor the passage broker or agent, nor the ship, is in any way liable for loss of or injury to or delay in delivery of luggage or personal effects of the passengers beyond the amount of fifty dollars, unless the value of the same in excess of that sum be declared at or before the issue of this contract, or at or before the delivery of said luggage to the ship, and freight at current rates for every kind of property is paid thereon."

Two days before the day of sailing the plaintiff delivered his trunk to an expressman with directions to deliver it to the defendant.    It was properly marked for delivery on board the steamship *Grosser Kurfürst*.    One of the expressmen, called as a witness for the plaintiff, testified that he delivered the trunk at the place where he had been in the habit of deliver-

ing baggage for a number of years; that a watchman at the entrance to defendant's piers told him what pier to place it on and that he delivered it to whoever was there.

It appears that plaintiff's trunk was not placed on the steamer on which he took passage, but by some mistake it was left on a different pier of the defendant than that from which the *Grosser Kurfürst* sailed, where it was subsequently destroyed by a fire which occurred on June 30th and greatly damaged the defendant's piers.

The jury rendered a verdict in favor of the plaintiff for $289.50, the value of the trunk and its contents, and the judgment entered on that verdict was unanimously affirmed at the Appellate Division.

*Joseph Larocque, Jr.,* for appellant. The court erred in charging the jury that if the valuation clause in the passage contract "was not called to the attention of the plaintiffs, and they knew nothing about it, and by the exercise of reasonable attention would not have known it, in that case it will go for nothing, and the amount will be fixed at the full value which you find these things were worth." (*Steers* v. *L., N. Y. & P. S. S. Co.,* 57 N. Y. 1; *Wheeler* v. *O. S. N. Co.,* 72 Hun, 5; *Belger* v. *Dinsmore,* 51 N. Y. 166.) The fact that the agreement does not specifically refer to losses occasioned by defendant's negligence does not deprive the defendant of the benefit of the valuation clause. (*Condict* v. *G. T. R. Co.,* 54 N. Y. 500; *Hart* v. *P. R. R. Co.,* 112 U. S. 331; *The Kensington,* 183 U. S. 263; *Magnin* v. *Dinsmore,* 62 N. Y. 35; *Rowan* v. *W. F. & Co.,* 80 App. Div. 31; *N. G. L. S. S. Co.* v. *Heule,* 44 Fed. Rep. 100; *Bermel* v. *N. Y., N. H. & H. R. R. Co.,* 62 App. Div. 389; *Muser* v. *A. E. Co.,* 1 Fed. Rep. 382; *Riley* v. *Horne,* 5 Bing. 217; *Morritt* v. *N. E. Ry. Co.,* L. R. [1 Q. B. Div.] 302; *Hinton* v. *Dibbin,* 2 Ad. & El. [N. S.] 646.)

*Lyman W. Redington* for respondent. The charge as to the applicability of the clause limiting defendant's liability was correct. (*Belger* v. *Dinsmore,* 51 N. Y. 166; *Steers* v.

*L., N. Y., etc., S. S. Co.,* 57 N. Y. 1; *Strong* v. *L. I. R. R. Co.,* 91 App. Div. 442; *Zimmer* v. *N. Y. C. & H. R. R. R. Co.,* 137 N. Y. 460; *Wheeler* v. *O. S. N. Co.,* 72 Hun, 5; *Blossom* v. *D. E. Co.,* 43 N. Y. 264; *Madon* v. *Sherard,* 73 N. Y. 329; *Grossman* v. *Dodd,* 63 Hun, 324; *Blossom* v. *Dodd,* 43 N. Y. 264; *Nicholas* v *N. Y. C. & H. R. R. R. Co.,* 89 N. Y. 370; *Bostwick* v. *Balt. & O. R. R. Co.* 45 N. Y. 717.) The liability clause cannot be asserted in the case at bar. By neglecting to put the trunk aboard, defendant subjected itself to the full liability of a common carrier. (*Rawson* v. *Holland,* 59 N. Y. 611; *London, etc.,* v. *Rome, etc., R. R. Co.,* 144 N. Y. 200; *Condict* v. *G. T. R. R. Co.,* 54 N. Y. 500; *Magee* v. *C., etc., R. R. Co.,* 45 N. Y. 514; *Read* v. *Spaulding,* 30 N. Y. 630; *Sloman* v. *N. Y. C. R. R. Co.,* 30 N. Y. 564; *Hutchins* v. *P. R. R. Co.,* 181 N. Y. 186; *Magnin* v. *Dinsmore,* 3 J. & S. 182; *Magnin* v. *A. E. Co.,* 50 How. Pr. 457; *Westcott* v. *Fargo,* 61 N. Y. 542; 63 Barb. 349; 6 Lans. 319.)

WERNER, J. For the purposes of this appeal we must assume that plaintiff's trunk was properly delivered to the defendant. The verdict of the jury settled that question in plaintiff's favor, and the unanimous affirmance of the Appellate Division precludes us from examining the record to ascertain whether the verdict is supported by evidence. There are exceptions to the charge, however, the principal one of which relates to the provision in the passage ticket purchased by the plaintiff, purporting to limit defendant's liability for loss of baggage. After the learned trial court had charged the jury very briefly as to the delivery of the trunk, and as to the obligations which the defendant assumed if the fact of proper delivery were deemed to be established, the defendant's counsel requested the court to charge "that in no event can the defendant be liable for an amount exceeding $50." In response to this request the court charged: "If this clause in this passage contract that the liability must be limited to $50 to each person * * * if that clause was not called to the attention of the plaintiffs, and they knew nothing

about it, and by the exercise of reasonable attention would not have known it, in that case it will go for nothing, and the amount will be fixed at the full value which you find these things were worth." This charge was clearly in conflict with a number of well-settled cases which hold that there is a just and logical distinction between an ordinary railroad ticket, which may often be regarded as a mere token, and a passage ticket for an ocean voyage, the sale and purchase of which is usually conducted with such caution and deliberation as to invest the transaction with the elements of a contract, the terms of which the purchaser has ample opportunity to ascertain and understand. (*Steers* v. *Liverpool, N. Y. & P. S. S. Co.*, 57 N. Y. 1; *Belger* v. *Dinsmore*, 51 id. 166; *Wheeler* v. *Oceanic Steam Nav. Co.*, 72 Hun, 5; affirmed without opinion, 149 N. Y. 576.)

The error in the charge referred to was later discovered by the learned trial judge upon the hearing and consideration of a motion for a new trial, when he handed down an opinion which recognized the controlling force of the cases above cited, but denied the motion on the ground that the passage ticket or contract contained no provision absolving the defendant from liability for its own negligence, and that the finding of the jury necessarily established the defendant's negligence in failing to put the trunk aboard the steamer on which the plaintiff sailed pursuant to his contract. To support this conclusion a number of cases were cited which, we think, have no application to the case at bar, since they all relate to the common-law liability of common carriers, unaffected by special contract stipulations designed to limit the carrier's liability.

There is, however, a case (*Westcott* v. *Fargo*, 61 N. Y. 542) which seems to support the conclusion that a stipulation limiting the amount for which the carrier shall be liable does not cover a loss of goods occasioned by his negligence. That action was brought to recover the value of a bale of furs, which had been shipped through the defendant's express company and lost by its negligence. The receipt given to evidence the shipment contained the following limitation : "Nor

shall this company be liable for any loss or damage of any box, package or thing for over fifty dollars unless the true and just value thereof is herein stated." The value of the furs was not stated in the receipt and the defendant had no means of knowing the value or nature of the contents of the package. The plaintiff's agent had delivered the receipt containing the limitation to the defendant's agent, who signed and redelivered it to the former. In deciding that under such circumstances the plaintiff was entitled to recover, Dwight, C., writing for the Commission of Appeals, said: "The true question in this cause concerns the effect upon the parties of the stipulation that the defendant should 'not be liable for any loss or damage of any box, package or thing for over fifty dollars, unless the just and true value is herein stated.' It must be conceded that this stipulation, under the circumstances of this case, is a part of the contract, and is binding on the plaintiff. This was decided in *Belger* v. *Dinsmore* (51 N. Y. 166) and in *Steers* v. *Liverpool, N. Y. & P. Steamship Co.* (57 id. 1). * * * The result of these cases is, that it is lawful for a carrier to make such a contract as was entered into in the present case, and that he may, by clear and distinct expressions, relieve himself from losses occasioned by his own negligence." After thus clearly stating the rule, which has ever since been consistently followed, the learned commissioner concluded that the words of limitation in the receipt referred to were not so unambiguous as to exempt the carrier from liability for its own negligence, and he was of opinion that the case was controlled by the decision in *Magnin* v. *Dinsmore* (56 N. Y. 168), where it was held that although a common carrier may stipulate for his exemption from liability for losses through his negligence, his contract will not be construed to contain such an exemption unless it is so expressly agreed.

The decision in *Magnin* v. *Dinsmore* (*supra*) was handed down in March, 1874. The case of *Westcott* v. *Fargo* (*supra*) was decided by the Commission of Appeals in January, 1875. In the following May the *Magnin* case came to this court on a second appeal, where it was held that a stipulation limiting

the amount for which the carrier shall be liable was binding upon the shipper who had notice of the limitation and whose merchandise had been lost by the ordinary negligence of the carrier. In that case the merchandise consigned consisted of watches and watch keys. The shipper did not disclose their real value. The receipt given by the carrier provided that "if the value of the property above described is not stated by the shipper, the holder hereof will not demand of the Adams Express Company a sum exceeding fifty dollars for the loss or detention of or damage to the property aforesaid."

In reversing a judgment for the full value of the goods lost, this court said: "As has been stated, in the absence of agreement for a limited liability, it is the duty of the carrier to make all needful inquiry as to value. But when the shipper agrees with the carrier for a limited liability, he thereby expresses to the latter his estimate of the risk to be run and of the care needed and holds out the package to him as an ordinary article which he would have no objection to take as of course. The carrier is thereby put off his guard. The shipper might refuse to agree to a limited liability and demand generally carriage upon the common-law liability of the carrier; and then they deal at arms length and that would arouse the attention of the carrier; or at least would put upon him the duty of inquiry. But accepting carriage upon the terms of a limited liability, the shipper indicates his judgment of the degree of the risk and of needed care; and his silence as to real value is the same as an assertion of mean value, thus keeping the carrier from his adequate reward, and, what is worse, misleading him as to the degree of care and security which he should provide."

The foregoing extract from the opinion in the *Magnin* case on the second appeal (62 N. Y. 35) makes it clear that the *Westcott Case* (61 N. Y. 542) was distinctly overruled, and it is to be observed that the latter case has never been followed in any of the decisions of the court upon the subject rendered since then. When the *Magnin* case came to this court a third time (70 N. Y. 410) the rule laid down on

the second appeal was distinctly reiterated, and it has been followed by this court in several subsequent cases. In *Zimmer* v. *N. Y. C. & H. R. R. R. Co.* (137 N. Y. 460) the plaintiff sued to recover the value of a mare killed while in transit on the defendant's road. The contract recited that in consideration of reduced rates it was agreed that in case of loss the value of the mare should be held not to exceed $100. The mare was killed through the negligence of the carrier. Judge Gray there said: "In this case the contract did not exempt the company from liability for the negligence which, we must assume, occasioned the loss of the horse. That occurred through none of the causes particularly specified in the contract, and nothing precluded the plaintiff from recovering upon the negligence proven; but the amount of his recovery was limited by the contract to the sum of $100."

The case last cited was followed in *Wheeler* v. *Oceanic Steam Nav. Co.* (72 Hun, 5; affd., 149 N. Y. 576), where a passenger upon a transatlantic steamer, holding a passage ticket limiting the liability of the carrier to ten pounds sterling for the loss of goods, the real value of which is not declared, delivered to the carrier with her other baggage a box of valuable portraits, which were lost through the latter's negligence. There it was held that there is no valid distinction in principle between a shipment of goods and a transportation of passengers with the carriage of baggage as an incident, when the contract is one which limits the liability of the carrier, unless a special declaration of value is made by the shipper or passenger. The rule adopted by this court has been sustained by the Federal Supreme Court in *Hart* v. *Penn. R. R. Co.* (112 U. S. 331), where the contract provided for the transportation of horses which were stated to be of the value of $200, and the recovery was limited to that amount, although the loss was much greater and was occasioned by the negligence of the carrier.

It has been suggested that there is, or should be, a distinction between a case where the stipulation is designed merely to limit the carrier's liability, as in the case of a passenger whose

baggage is carried free of charge, and the case of a stipulation framed for the double purpose of enabling a carrier of goods for hire to obtain proper compensation, as well as to limit his liability if no declaration of value is made by the shipper. At first glance this suggestion has a plausible appearance, but it does not seem to stand the test of analysis. It is not apparent why a carrier should be subjected to a greater liability in respect of a service which he performs free of charge, or simply as an incident to the carriage of persons, than is imposed upon him in the transportation of merchandise pursuant to a contract in which that is the precise duty which he undertakes for a specified hire. In the carriage of baggage the passenger usually exercises some degree of supervision or direction which may somewhat increase or diminish the carrier's actual responsibility; but in the shipment of goods the carrier takes complete possession and control, so that, if there could be any logical differentiation of the carrier's liability in the two cases, it could very plausibly be argued that it ought to be relaxed rather than augmented in the carriage of a passenger's baggage. But, whatever might be said upon that proposition, it is enough to suggest that it is not an open question in this state, for this court, as we have seen, has held that no such distinction exists.

The judgment herein should be reversed and a new trial granted, with costs to abide the event, unless the plaintiff shall stipulate to reduce his recovery to the sum of fifty dollars, with interest from the date of his loss, and costs, in which event the judgment herein as reduced should be affirmed, without costs of this appeal to either party.

Haight, J. (dissenting). This action was brought to recover the value of the plaintiff's trunk, and wearing apparel therein contained, which was delivered to the defendant company for transportation from New York to Bremen on the North German Lloyd steamship *Grosser Kurfürst*, to sail June 28th, 1900, at twelve o'clock noon, but which, by reason of the negligence of one of the defendant's employees, was

placed on the wrong pier, and was not, therefore, placed on board of the vessel when she sailed, and was subsequently destroyed by fire. The question arising upon the trial with reference to the delivery of the trunk to the defendant and the negligently placing of it upon the wrong pier, was settled by the verdict of the jury and the unanimous affirmance of the judgment entered thereon by the Appellate Division.

The plaintiff had previously procured a ticket from the defendant's office for his transportation from New York to Bremen on the steamship named, which contained the condition to the effect that the defendant should not be liable " for loss of or injury to or delay in delivery of luggage or personal effects of the passengers beyond the amount of fifty dollars, unless the value of the same in excess of that sum be declared at or before the issue of this contract, or at or before the delivery of said luggage to the ship, and freight at current rates for every kind of property is paid thereon." The court, in its charge to the jury, submitted the question as to whether the plaintiff had his attention called to this condition embraced in the ticket at the time he procured the same, or that he knew of the provision at the time of the delivery of the trunk to the defendant. For the purpose of this case I shall assume, but without determining it, that the plaintiff was chargeable with constructive notice of this provision contained in the ticket, and that the court improperly submitted that question to the jury. But it could not possibly have harmed the defendant, if, under the plaintiff's contention, the proper construction of the contract is that it did not relate to the loss or injury of baggage occurring through the negligence of the defendant or of its employees. There was no declaration made on behalf of the plaintiff of the value of the trunk and contents before its delivery to the ship. The defendant asked the court to charge that there can be no recovery for more than fifty dollars. This was refused, and the question is, therefore, presented as to the meaning of this provision. It will be observed that the limitation of the liability of fifty dollars is for the loss or injury to or delay in delivery of lug-

gage or personal effects of the passengers. Nothing is said with reference to negligence of the defendant or of its servants. The limitation of fifty dollars is to the cases of loss, injury or delay therein referred to. At common law the vessel owners were held to strict liability for the care of property delivered to them. They were practically insurers and liable for the property without regard to the question of negligence. It was doubtless for the purpose of relieving the defendant from its strict liability under the common law that the clause in question was inserted in the contract, and not for the purpose of relieving the defendant from its negligence. If common carriers of persons and property are to be relieved from liability for their acts of negligence, then they are no longer under legal obligation to exercise any care or caution with reference to property delivered into their custody for transportation. They may leave it in dangerous or unguarded places, subject to the action of thieves or to injury by reason of storms. They may dump it wherever the whim of a careless or reckless employee may suggest or find most convenient for his purpose. They may put a traveler's trunk on board or leave it, as the inclination of the servant may dictate, and they would be under no obligation to keep a record of it or to aid owners in tracing it in case of loss, for they would owe him no legal duty with reference to its care, protection or even delivery. This is what is meant by the relieving of common carriers from liability for negligence with reference to property delivered to them for transportation. A contract, therefore, which is claimed to relieve a common carrier from negligence should be carefully scrutinized. As was said by Maynard, J., in the case of *Rathbone* v. *N. Y. C. & H. R. R. R. Co.* (140 N. Y. 48): " It is well settled that these stipulations in the contract will not be construed to relieve the carrier from liability for his own negligent acts. His duty and obligation to exercise a proper degree of care of the property while in his custody is not affected by them. Full and sufficient scope is given to their operation when it is held that they exempt the carrier from his common-law responsibility

as an insurer of the property. It is not reasonable to suppose that the party intended to contract that a bailee for hire might with impunity be careless and remiss in the discharge of the trust reposed in him. If such a result is intended it must be so stated expressly and unequivocally in the contract. General words are not sufficient. Notwithstanding the contract of shipment in this case, defendant's liability for negligence in the handling and transportation of the property remained unimpaired, unless there is some other ground upon which exemption can be predicated." (*Magnin* v. *Dinsmore,* 56 N. Y. 168; *Minard* v. *Syracuse, B. & N. Y. R. R. Co.,* 71 N. Y. 180; *Nicholas* v. *N. Y. C. & H. R. R. R. Co.,* 89 N. Y. 370; *Jennings* v. *Grand Trunk R. Co.,* 127 N. Y. 438.) I consequently conclude that the losses referred to in the contract had reference to the common-law liability of the common carrier, but not including losses which occurred by reason of the carrier's negligence. It is claimed, however, that a shipper may agree upon the value of the property shipped, and that such an agreement is binding upon him. Very true, if he so expressly agrees. (*Zimmer* v. *N. Y. C. & H. R. R. R. Co.,* 137 N. Y. 460.)

But in this case it appears from the evidence that he did not know of the condition limiting the defendant's liability as expressed in the ticket delivered to him, and that he did not have his attention called thereto at the time he purchased the ticket. He at most, therefore, is chargeable only with constructive notice of such a limitation. The trunk lost contained nothing but ordinary wearing apparel, such as was customary for travelers to take on journeys of this character. The value, while exceeding the limitation expressed, did not exceed that ordinarily contained in the luggage of passengers. There was, therefore, no deception as to its character or contents, and it, therefore, is distinguishable from the case of *Magnin* v. *Dinsmore* (62 N. Y. 35). In that case a box contained bills, checks, and notes of over £4,000 in value, $20,000. Its contents had not been disclosed to the carrier who was deceived with reference thereto. It, therefore,

appears to me that the restriction as to the amount of the liability contained in the ticket had reference to the losses therein contemplated; and the losses therein contemplated not having reference to losses occurring through negligence, the limitation did not relate to such losses. In the case of *Bermel* v. *N. Y., N. H. & H. R. R. Co.* (62 App. Div. 389) the common carrier had inserted in the bill of lading a limitation as to the value of the property shipped, with similar conditions to those which we have had under consideration. In that case it was held, by the unanimous decision of the Appellate Division, second department, that the conditions and the limitation as to value had reference to the losses occurring otherwise than through the negligence of the carrier for which it would be liable at common law, and that, therefore, the shipper had the right to recover for all the damages suffered by him by reason of the carrier's negligence. This case was affirmed in the Court of Appeals upon the opinion written in the Appellate Division by Woodward, J. (172 N. Y. 639). In *Kenney* v. *N. Y. C. & H. R. R. R. Co.* (125 N. Y. 422), Gray, J., says: " The rule is firmly established in this state that a common carrier may contract for immunity from its negligence, or that of its agents; but that, to accomplish that object, the contract must be so expressed, and it must not be left to a presumption from the language. Considerations based upon public policy and the nature of the carrier's undertaking influence the application of the rule and forbid its operation, except where the carrier's immunity from the consequences of negligence is read in the agreement *ipsissimis verbis.*" (See, also, *Wheeler* v. *Oceanic Steam Navigation Co.*, 125 N. Y. 155–160; *Johnston* v. *Fargo*, 184 N. Y. 379; *Jennings* v. *Grand Trunk R. Co.*, 127 N. Y. 438–450, and authorities cited in the foregoing cases.)

The judgment should be affirmed, with costs.

Gray, Edward T. Bartlett and Hiscock, JJ., concur with Werner, J.; Cullen, Ch. J., concurs with Haight, J.; O'Brien, J., absent.

Judgment reversed, etc.