Decision accordingly.

---

(62 Misc. Rep. 499.)

### MAGNUS v. PLATT.

(Supreme Court, Appellate Term. March 22, 1909.)

1. CARRIERS (§ 47*)—DRIVER OF EXPRESS WAGON—AUTHORITY IN COLLECTING PARCELS.

   The driver of an express wagon is the general agent of the company to collect goods for transportation, and has all necessary implied powers within the scope of his authority for that purpose, so that the company is bound by his statement that a parcel which the consignor's agent offered to re-mark was all right and would reach its destination without re-addressing it.

   [Ed. Note.—For other cases, see Carriers, Cent. Dig. § 107; Dec. Dig. § 47.*]

2. PRINCIPAL AND AGENT (§ 93*)—GENERAL AUTHORITY—PARTICULAR BUSINESS.

   Though an agent's authority is limited to a particular business, it may be as general as though its range were unlimited.

   [Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. § 247; Dec. Dig. § 93.*]

3. CARRIERS (§ 199*)—CARRIAGE OF GOODS—DUTIES IN GENERAL—LIMITATION OF SERVICES.

   While carriers may limit their services to the carriage of particular kinds of goods, and prescribe regulations to protect themselves against imposition and fraud, they cannot discriminate between persons or vary their charges because of their condition or character, and must accept

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

all goods offered within the course of their business, or respond in damages.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 901; Dec. Dig. § 199.*]

4. CARRIERS (§ 47*)—ADDRESSING PARCELS FOR TRANSPORTATION.

There is no legal rule that carriers will take only parcels legibly addressed, or that parcels without address at all may not be given to, and taken by, the carrier's driver.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 107; Dec. Dig. § 47.*]

5. CARRIERS (§ 134*)—CARRIAGE OF GOODS—PRIMA FACIE PROOF OF NEGLIGENCE.

A carrier having undertaken to carry and deliver a parcel, proof of its failure to do so is prima facie evidence of its negligence.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 588; Dec. Dig. § 134.*]

6. CARRIERS (§ 159*)—CARRIAGE OF GOODS—AGREEMENT LIMITING LIABILITY—TIME FOR PRESENTING CLAIM.

An express company's driver accepted a package from the consignor's agent, assuring him that the address which he had corrected with a pencil was all right, and that the parcel would reach its destination. The package went to the wrong place, and the consignor was not notified until five months thereafter, and in none of its correspondence in relation to the matter did it claim that the consignor could only make a claim within 60 days from the date of shipment, as provided in the contract. *Held*, in an action for its negligence, that the carrier was precluded by its negligence and delay from asserting the limitation as to the time of presenting the claim.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 714; Dec. Dig. § 159.*]

7. CARRIERS (§ 158*)—LIMITATION AS TO LIABILITY—VALUE OF EXPRESS PACKAGE.

An agreement that a carrier of an express package, the value of which is not stated, shall not be liable in any sum above $50, is good, whether the carrier is careless or not.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 665; Dec. Dig. § 158.*]

Appeal from Municipal Court, Borough of Manhattan, First District.

Action by Julius Magnus against Thomas C. Platt, as president of the United States Express Company, for failure to promptly deliver a package. From a judgment for plaintiff, defendant appeals. Reversed.

Argued before GILDERSLEEVE, P. J., and MacLEAN and DAYTON, JJ.

O'Brien, Boardman, Platt & Littleton, for appellant.
Mervyn Wolff, for respondent.

MacLEAN, J. On August 19, 1907, a clerk of the plaintiff, on the street in front of his place of business, 715 Broadway, New York, handed to the driver of the defendant a parcel addressed: "A. J. Banks, 392 Main St., Paterson, N. J.," with a proposed voucher for the same on one of the defendant's blanks, on which was the address: "E. J. Banks, East Orange, N. J." The driver signed the voucher, then asked which was correct, East Orange or Paterson. On being told East Orange, he handed his indelible pencil to the clerk with:

---
*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

"Here, correct it. Scratch out 'Paterson' and mark 'East Orange' alongside." The clerk with the driver's pencil erased "Paterson," and put on "East Orange." Then he insisted on taking the package upstairs again to re-wrap and re-mark it, offering back the signed voucher, but the driver having possession of the parcel kept it, saying, "It is all right; it will reach its destination." Of his merchandise the merchant heard nothing until there came a postal card dated January 18, 1908, from the defendant's agent at Paterson, who filled out a printed form to read: "We have received and hold at owner's risk pkg to A. J. Banks, unknown give dispo." On plaintiff's immediate request the package was offered to the consignee, who refused to take the goods, heavyweight woolens, which by the advanced season had depreciated to $82.50, one-half their value at time of shipment. On request, the plaintiff wrote full details of the shipment. There followed much correspondence, the defendant writing professions of its diligent inquiries and efforts to learn how its failure happened, down at least to April 3, 1908. In none of its letters did the defendant assert, as presently, that the shipper's negligence caused the trouble, that he could make a claim only within 60 days from the date of shipment, and then for not more than $50. At last the shipper brought this action, and in it the learned trial justice awarded him $82.50 by "the true rule of damages." Sherman v. Hudson River R. Co., 64 N. Y. 259.

The defendant contends—in a way, it is its most important contention—that it was error to allow testimony of what its driver said to the clerk, whom it calls the plaintiff's agent, because that was "entirely beyond the scope of the driver's limited liability." Not so is the law. The driver was the general agent of the defendant for the purpose of collecting goods for transportation, and he possessed all the necessary implied powers within the scope of his authority for that purpose. There he stood in the place of his principal, in respect of the particular business, to conduct it as a prudent and discreet man would manage his own affairs; and, though limited to a particular business, his authority might be as general as if the range of it were unlimited. Nelson, J., in Anderson v. Coonley, 21 Wend. 279.

This principle is not one-sided. Common carriers applying it on their side continuously treat persons intrusted with the delivery of and delivering goods as having authority to stipulate for and accept terms of affreightment, and, as rule the courts, to bind the owners of the property. Nelson v. Hudson R. R. Co., 48 N. Y. 498; Shelton v. Merchants' Despatch Trans. Co., 59 N. Y. 258; Jennings v. G. T. Ry. Co., 127 N. Y. 438, 28 N. E. 394.

Within limitations, exercising in a sense a public employment, exploiting monopolies by parceling out territory among themselves, carriers have duties toward the public. They may limit their services to the carriage of particular kinds of goods, and may prescribe regulations to protect themselves against imposition and fraud, but they can make no discrimination between persons or vary their charges from their condition or character. They are bound to accept all goods offered within the course of their employment, or respond in damages for breach of duty.

The driver was not an automaton. If he arbitrarily refused what was offered, or if he took the obviously objectionable, badly packed, dangerous, misleadingly addressed, or the like, he would not have been fit for his place on the wagon, nor would he have stayed there had he not had and exercised discretion. Giving advice, asked and unasked, about the completeness, the legibility or illegibility, of addresses by the agents of common carriers of goods and of transmitters of telegrams, is so usual that one who withholds it is called a curmudgeon, and, on complaint, apologized for by · his employer. If, in the driver's experienced observation the address was plain enough, it was presumably so for other employés. The narrated colloquy with the driver and his unwillingness to wait for re-marking the package with an address when he thought the one already on good enough are so natural as to have awakened the expectation of his appearance as a witness, or explanation of his absence if the narration could be contradicted. No one has been at pains to have the wrapper with its address included in the return, although it was introduced in evidence upon the trial, where it was within the view and inspection of the trial justice, whose finding of negligence includes a determination like that of the driver—that the address was intelligible enough.

There is no legal rule that carriers will take only parcels legibly addressed, or that parcels without address at all may not be given to and taken by the carrier's driver. The pioneers of parcel transportation between the Hudson and the Pacific, and who became chiefs in their line, could hardly read, scarcely wrote at all. Even now, at least within a few years, systematic stowage in the vehicle is or was the mnemonic aid for distribution of the parcels carried, because the capable driver, intelligent in other things than letters, could not even make out the tags on the star route pouches of the United States mail. But whatever the address, and whether addressed at all, the defendant by its agent's act and by his given writing—call it receipt, voucher, or what not—undertook to carry and deliver the parcel to A. J. Banks in East Orange, N. J., and its proof of failure so to carry and deliver it was proof prima facie of its negligence.

Assuming that the plaintiff should be held to have known the contents of the paper made out by his clerk upon blanks kept in his office for regular use (Gibson v. Am. M. U. Ex. Co., 1 Hun, 387), and that the proffer of the paper with the parcel to the driver and his acceptance of the latter and signing of the former constituted prima facie an agreement between the parties, the first separate defense of the carrier, viz., that no liability should arise to it unless a claim were presented in writing within 60 days of the shipment, depends upon its reasonability under the circumstances. Common carrier decisions are frequent to a byword, and irreconcilable ever. Seemingly they are so largely because modifications of old-time obligations to meet modern exigencies, made, not by legislators, but by courts, arise through predicating reasonable and unreasonable of the terms and conditions written by the common carrier into his voucher to the shipper. Irreconcilable are the decisions, because differentiating reasonable and arbitrary, always referable to surroundings, depends in judicial legislation

upon circumstances, moods, and modes—fashion of the times and of the bench. It has been said upon our highest authority that, when a clear and express stipulation relieving him from the full measure of that responsibility which ordinarily attends his occupation has been obtained by the carrier from his employer, the court must be able to see that it is not unreasonable.

Under the agreement, bilateral as it was, the defendant was bound to ordinary prudence, care, and diligence. If one of its servants deciphered the scratched-out address and took the parcel to Paterson, the same or another servant speedily learned the consignee was not there findable, and so to rectify, as far as might be, the mistake, should forthwith have taken the parcel to the address pronounced legible by the driver and so found by the court. If doubt arose thereafter, prompt notice should have been given to the sender, whose address was on the wrapper, for the benefit of his business and for the advertisement of each honest person into whose hands the parcel came, consignee, bailee, finder, and what not, even the carrier. The propriety of resorting to this advertisement and notification the carrier recognized by sending the belated postal card of January 18th. Indeed, the propriety of such a notification has been recognized in this state since 1837 (section 1, c. 300, p. 311, Laws 1837), when it was made the duty of the common carriers, then well-known, proprietors of lines of stages, canal boat lines, steamboats, and incorporated railroad companies, to immediately notify the owner of unclaimed trunks, boxes, or baggage by mail, and provided a penalty of $5, recoverable in an informer's action, for every article so neglected. The express companies, then unknown, were not brought in upon the amendment of this statute for the protection of the public. They have obtained protection by the act of 1855 (Laws 1855, p. 958, c. 523), allowing for the sale of perishable and unclaimed goods.

Cases abound wherein ordinances of limitation, lesser and longer in length, have been upheld, but none is cited to the court, neither is any disclosed by search, ruling it reasonable that a carrier may by its own ordinance secure exemption for its own blunders by suppressing the information of its blunders resting in its alone knowledge. That would let it set an unwholesome premium upon its untoward reticence, would offer temptation for the hiding of facts to all ranks in an occupation wherein is demanded a peculiarly high standard of duty, because, among other things, carriers (if not altogether and alway among themselves) exploit monopolies as to the public. The gross negligence of the carrier in handling this parcel was found upon ample proof. Its great delay in notifying its customer was commercially culpable, or of such negligence as to apply culpability and set aside the ordinance of limitation which it would exact from its particular customer as well as from the whole public.

Of the second separate defense, that, inasmuch as the value was not stated, it was validly agreed between the parties that the defendant should not be liable in any sum above $50, it is otherwise. Such a limitation is presently good. It is so held in the latest pronouncement thereabout by the Court of Appeals (Tewes v. N. G. Lloyd, 186 N.

Y. 151, 78 N. E. 864, 8 L. R. A. [N. S.] 199), wherein are exhibited on one page of the learned prevailing opinion a quotation from a prevailing opinion (Westcott v. Fargo, 61 N. Y. 542, 19 Am. Rep. 300) written January, 1875, by a schoolmaster in the law, temporarily a judge, "clearly stating the rule which has ever since been consistently followed," and, on the opposite page, from an opinion handed down four months later and reported in the succeeding volume (Magnin v. Dinsmore, 62 N. Y. 35, 20 Am. Rep. 442), a quotation which "makes it clear that the Westcott (the schoolmaster's) Case was distinctly overruled." Both cases have been cited on both sides the bar fittingly and frequently during the past four and thirty years. Harmony of these profound productions of the law of the land is perplexing to the perspicacious. Early in the current decade this vicissitudinous question came up again and was settled once more. The Appellate Division in an adjoining department took the "distinctly overruled" case for the right ruling, decided accordingly, and saw it approved on their own opinion in the Court of Appeals. Bermel v. N. Y., N. H. & H. R. R., 172 N. Y. 639, 65 N. E. 1113. That case is in point for the respondent, and he cites it, confident of keeping his judgment. His confidence is misplaced. Overlooking the evolution of judicial legislation, he has overlooked the newer case (Tewes v. N. G. Lloyd, 186 N. Y. 151, 78 N. E. 864, 8 L. R. A. [N. S.] 199) brushing away the foundation of Bermel's judgment. Mayhap this is not surprising, for so smart has been the progress of that evolution in our court of final instance that two of the members, one of them the Chief Justice of that venerable college, took the Bermel Case for law and on its strength dissented.

As remarked above, the limitation of claim and recovery against the carrier to $50 is presently good, whether the carrier be careless or not, and the judgment should be reversed and a new trial granted, with costs to abide the event, unless the plaintiff stipulate to reduce his recovery to the sum of $50, with interest from the date of his loss, and costs, in which event the judgment herein as reduced should be affirmed, without costs of this appeal to either party.

GILDERSLEEVE, P. J., and DAYTON, J., concur in the result.