John McKeon, Plaintiff, v. The New York, New Haven and Hartford Railroad Company, Defendant.

First Department, April 5, 1917.

Carriers — special contract for transportation of theatrical company and effects construed — provision relieving carrier from liability for negligence — liability for loss of personal effects from trunk shipped under such contract — fraud in shipping trunk in baggage car — liability of carrier under stipulation in passenger ticket for loss of baggage.

Where a business manager of a theatrical company made a contract with a railroad company for the transportation of his company and its effects by which it was expressly stipulated that he was to have two baggage cars, and that the railroad company would take "no cognizance of the effects loaded in the car," and would impose no restrictions, other than that "they shall be effects used in the theatrical productions," it being "understood that the theatrical company will assign a man to safeguard its effects while in the car both at terminal points and while in transit, as the railroad company will not assume responsibility for safeguarding the contents of the car," and the railroad company was released "from any and all liability for loss, injury or delay * * * in whatsoever manner caused, whether by negligence or otherwise," and in such release the business manager expressly agreed that he would "assign a man to safeguard said properties while in the cars both at terminal points and in transit," but no one was assigned by the theatrical company to safeguard its property in the cars, and upon their arrival at destination it was found that the trunk of the business manager containing his personal effects had been broken open and many things taken therefrom, he is not entitled to recover the value thereof from the railroad company.

The railroad company's immunity from liability under the contract is not, under the circumstances, affected by the fact that under the rules of said company no one other than an employee thereof can ride in a baggage car unless there is being shipped therein animals or livestock, or unless application is made to and consent of the operating department obtained.

The railroad company simply leased to the theatrical company the two baggage cars and was not acting as a common carrier so as to prevent it from lawfully contracting for immunity from the results of its own negligence.

The business manager of the theatrical company in shipping his trunk in the baggage car was guilty of fraud so as to prevent a recovery from a common carrier, even though the loss resulted from its negligence.

The ordinary stipulation on a passenger ticket as to the value of baggage refers to baggage carried by the company as such and not to goods in the nature of baggage shipped as freight or otherwise, and, hence, the business manager of the theatrical company is not entitled to recover under such a stipulation.

SUBMISSION of a controversy upon an agreed statement of facts pursuant to section 1279 of the Code of Civil Procedure.

*Arthur F. Driscoll,* for the plaintiff.

*James W. Carpenter,* for the defendant.

SCOTT, J.:

Plaintiff during the theatrical season of 1913–1914 was the business manager of a theatrical company and in that capacity had certain negotiations leading up to a contract with defendant for the transportation of said company and its effects from New York to Boston. The final contract was evidenced by certain documents. One was a letter addressed to plaintiff by defendant's general passenger agent stating that arrangements for moving the company, "numbering twenty-five people and requiring two sixty-foot baggage cars for their effects will be made subject to conditions specified in the attached sheet, form B. 269." Then followed details as to where the baggage cars would be placed, the trains to which they would be attached and the time when they would be moved, the time when the company was to leave New York and to arrive in Boston, the fare *per capita* and the charge for each baggage car with a statement that a block ticket was to be secured from the ticket agent and payment for the cars made to the baggage master at the point of departure.

Form B. 269, referred to in the foregoing letter and attached thereto, was headed as follows:

"GENERAL PASSENGER DEPARTMENT
"NEW HAVEN, CONN.

"Conditions under which theatrical scenery or properties used in stage performances will, at the convenience of the railroad company, be moved in passenger train service."

Among the conditions were the following:

"As the Railroad Company takes no cognizance of the effects loaded in the car (s), and imposes no restrictions, other than that they shall be effects used in the theatrical productions, it is understood that the theatrical company will assign a man to safeguard its effects while in the car, both at terminal point (s), and while in transit, as the Railroad Company will not assume responsibility for safeguarding contents of the car (s). . Also that the authorized representative of the theatrical company will give proper notice at initial point (s), as soon as car (s) is (are) loaded, and ready to go forward."

Upon receiving the above-mentioned letter plaintiff proceeded to defendant's terminal in the city of New York and purchased from the ticket agent a block ticket for the transportation of twenty-five persons from New York to Boston, and on the same day paid to defendant's baggage master the agreed price for the hire and use of two baggage cars. At the time of purchasing the above-mentioned block ticket plaintiff, at defendant's request and without protest on his own part, signed the following release:

"Sep. 27, 1913.

"RELEASE COVERING THEATRICAL PROPERTIES.

"In consideration of the transportation on passenger trains, of certain properties and animals used in public entertainment, belonging to Bway Jones Company, or members of said Company, between Harlem River and Boston, Mass., I, as owner or duly authorized Agent of the owners, hereby release The New York, New Haven and Hartford Railroad Company, and the other Transportation Company or Companies forming a part of the through route to destination, from any and all liability for loss, injury or delay to such properties or animals, in whatever manner caused, whether by negligence or otherwise, while in its or their possession or control, or on its or their premises; it being understood and agreed that the said Company or Companies have only covenanted to undertake such transportation on its or their passenger trains, instead of freight trains, in consideration of such release from liability as hereinbefore provided, and that in such transportation, the said Railway Company and its connections are not to be considered common carriers or liable as such, and it is further agreed that

said owner or his Agent shall assign a man to safeguard said properties or animals while in the cars both at terminal points and in transit.

```
" Check Nos.                    2 Baggage Cars,
  " Kierm                         J. McKEON,
    " Witness.                  Owner or Agent."
```

The rates charged by the defendant and the release exacted by it were included in the tariff schedules of defendant in force when the transaction took place and duly printed, published, posted and filed as required by law.

On September 27, 1913, defendant provided and supplied for the use of said company and for the transportation of its scenery, properties, baggage and effects the two baggage cars which were placed in the Harlem river yards of defendant and were turned over to the company of which plaintiff was manager, for loading, the same to be done by said company or its agents or servants. The plaintiff had employed a local transfer company to, and it did, transfer and load the property, effects and baggage of the theatrical company to and in the aforesaid cars, and neither the defendant nor any of its agents or servants took part therein.

The plaintiff seeks to recover the value of the contents of a trunk which was his personal property and which was loaded by his agent, the transfer company, upon one of the baggage cars. The circumstances leading up to and attending such loss can best be stated in the words of the submission as follows:

" XX. That the aforesaid baggage cars were occupied exclusively by scenery and effects of the ' Broadway Jones Company ' and of the actors and people connected therewith. That in one car there was shipped the scenery of the production and in the other car, viz., car No. 5661 there was shipped the crates containing furniture and such articles used in the production, and the trunks and personal baggage of the performers and other persons connected with the aforesaid show. The plaintiff's trunk herein spoken of was placed in car No. 5661. That neither the plaintiff nor any authorized agent of the ' Broad-

way Jones Company' assigned anyone to safeguard the trunk or other properties in either of said cars while at either the terminal points in New York or Boston or while in transit.

"XXI. On the completion of said loading, said employee of the Cain Transfer Company endeavored to find the lock of the car in which said trunk was placed. Unable to find said lock, he called at the office of defendant Company, near the entrance to said yards and notified the watchman in the employ of defendant Company to lock the cars. Thereafter, the said employees of the Cain Transfer Company and the employees of the 'Broadway Jones Company' departed from the yard leaving said car and trunk intact.

"XXII. That the baggage car in which plaintiff's trunk was placed was car No. 5661 and belonged to the Pennsylvania Railroad Company, and had four doors, two at the ends and two at the sides thereof.

"XXIII. That at that time, defendant employed two watchmen whose duties were to watch and guard over said railroad yards and the contents of all cars.

"That neither of the aforesaid watchmen broke into the trunk of plaintiff or took any of the property of plaintiff therefrom, nor did they see said trunk being broken into nor any of its contents being removed while in or out of defendant's yard nor did they know anything about breaking, entering or taking from said trunk.

"XXIV. That no one other than an employee of the defendant Company can ride in a baggage car unless there is being shipped therein animals or live stock or unless application is made to and the consent of the Operating Department of the defendant is obtained. That neither the plaintiff nor any authorized agent of the 'Broadway Jones Company' made any application to the Operating Department of the defendant for leave to assign a man to safeguard said trunk or other contents of the said cars while at either of the terminal points in Boston or New York or in transit. That no animals of any sort were shipped in either one of these cars on the trip in question.

"XXV. That the two baggage cars were attached to the Adams Express Train No. 32 which left Harlem River at

eleven-thirty p. m., September 28th, 1913, and was due to arrive at Boston at 6:24 a. m., September 29th, 1913, according to the train schedules filed and posted as set forth in paragraphs numbered XI and XII.

" That said train was engaged in regular service from New York City to Boston, leaving daily, and making the same number of stops and the same time as defendant's regular through passenger trains between said points.

" That said train did not carry any members of the ' Broadway Jones Company ' or other passengers. That no one but an employee of the defendant or of the said Express Company would be allowed to ride on said train No. 32 unless application was made as stated in paragraph XXIV hereof. That said train did not carry any freight nor was it engaged in freight service. That it was a regular train in daily service between New York and Boston and devoted to transportation of express shipments.

" That the plaintiff and other members of the ' Broadway Jones Company ' were transported to Boston in regular passenger service on the 29th day of September, 1913, when their fares were paid by delivery to defendant's conductor of the said block ticket.

" XXVI. That the cars arrived in the Boston Terminal on September 29th, 1913, at about nine-forty-seven a. m., where the employees of a cartage or express company, employed by the plaintiff to remove the contents of the cars, were waiting for them. That car No. 5661 was then opened by the employees of the express company, who found the plaintiff's trunk and the safe inside thereof broken open and much of the contents thereof missing or strewn about the car. That the employees of the ' Broadway Jones Company ' soon thereafter took charge of the car. The said employees found no lock either on, in or about said car. That the said cars were then unloaded by the employees of either the ' Broadway Jones Company ' or the cartage company.

" XXVII. The plaintiff lost property in the value of $1,800 which was contained in the aforesaid trunk at the time that said trunk was loaded upon the aforesaid car No. 5661 in New York City, and which was found missing therefrom at the

First Department, April, 1917.          [Vol. 177.

time the car was examined by the employees of the express company in Boston, as set forth in paragraph numbered XXVI."

We are of opinion that, upon the stipulated facts, the plaintiff fails to establish any cause of action.   The parties are bound by the contract which they voluntarily made, and it was thereby expressly stipulated that defendant would take " no cognizance of the effects loaded in the car," it being " understood that the theatrical company will assign a man to safeguard its effects while in the car, both at terminal points and while in transit, as the railroad company *will not assume responsibility for safeguarding contents of the car.*"   In addition, the plaintiff expressly released the defendant "from any and all liability for loss, injury or delay   *   *   *   in whatever manner caused, whether by negligence or otherwise," and in such release he expressly agreed that he should " assign a man to safeguard said properties   *   *   *   while in the cars both at terminal points and in transit."

If we are to have regard to the contract alone it is clear the plaintiff has no case.   He expressly and explicitly contracted himself out of court by agreeing that he himself, or the company of which he is business manager, should assume all responsibility for the care of the goods while on the cars.   The defendant's immunity from liability under the contract is not affected by the stipulated fact that under the rules of the defendant " no one other than an employee of the defendant company can ride in a baggage car unless there is being shipped therein animals or live stock or unless application is made to and the consent of the Operating Department of the defendant is obtained."   The very contract between plaintiff and defendant provided for an assignment of a representative of plaintiff to safeguard the properties during transit, and this of itself necessarily implied the consent of the defendant that such representative might accompany the shipment, and, if any other or further consent was necessary, it is stipulated that neither the plaintiff nor any authorized agent of the theatrical company ever made application for such consent.

But the plaintiff urges that the defendant in transporting the theatrical company's baggage and effects was acting as a common carrier and as such cannot lawfully contract for

immunity from the results of its own negligence, and he further insists that we must infer negligence as matter of law from the agreed facts, although the stipulation does not mention negligence as one of the admitted facts in the case.

This argument, as we consider, is based upon a misapprehension as to the nature of the contract of carriage. The case is much like the so-called circus cases of which *Ferrari* v. *N. Y. C. & H. R. R. R. Co.* (162 App. Div. 6) is a typical example. In that case Mr. Justice McLAUGHLIN, writing for the court, quoted and adopted the language of Judge LURTON in *Clough* v. *Grand Trunk Western Ry. Co.* (155 Fed. Rep. 81) as follows: " If the contract under which the Wallace Circus was being transported over the railway of the defendant was a valid contract, the relation of the railway company to the circus company was not that of a common carrier at all. That the railway company was under no common-law obligation to move the circus company over its line in the manner it was being transported at the time of the injury to the plaintiff in error must be conceded. If the railway company was under no statutory or common-law obligation to render the special service it was called upon to render there were no reasons of public policy which forbade the rendition of such service upon such terms as the parties might stipulate." In the present case the defendant simply leased to plaintiff for the time two baggage cars in which plaintiff might store anything he chose of effects used in theatrical productions or might store nothing at all. In addition to leasing the baggage cars it agreed to transport them. This was not a service imposed upon it by statute or at common law. It is true that the contract in this case differed from the usual circus contracts in that in these cases the railroad companies lease whole trains, whereas in this case defendant leased only two cars which were attached to a regular train. This, however, we consider a difference in degree rather than in kind. If this loss which the plaintiff suffered had resulted from negligent operation of the train to which the baggage cars were attached it may be that a different question would be presented, but that we are not called upon to consider at present. In addition to all this the plaintiff was guilty of a fraud upon the defendant in shipping

his trunk upon the baggage car. It was expressly agreed that one restriction, and one only, was imposed upon the goods to be loaded into the cars, and that was that "they shall be effects used in the theatrical productions." It is expressly stipulated that plaintiff's trunk and its contents did not fall within this description. Indeed, especial emphasis is laid upon the fact that the trunk contained only plaintiff's "personal property and not theatrical scenery and properties used for stage performances." This was a clear attempt to defraud the defendant and to procure the transportation of property of unusual value without paying the charges which, under defendant's schedules, would have been required if the true nature and value of the trunk and its contents had been declared. The authorities are uniform that under such circumstances no recovery can be had from a common carrier even though the loss resulted from its negligence. (*Rathbone* v. *N. Y. C. & H. R. R. R. Co.*, 140 N. Y. 48; *Hachadoorian* v. *Louisville & Nashville R. R. Co.*, 128 App. Div. 171.)

As for plaintiff's alternative claim that he is entitled to at least $100 if not to the larger sum, but little need be said. The claim is based upon a stipulation printed upon the block ticket on which plaintiff and the members of his company traveled from New York to Boston.

That stipulation reads as follows: "4th. Baggage valuation is limited to One Hundred Dollars for an adult and Fifty Dollars for a child unless purchaser hereof declares a greater valuation at time baggage is presented for transportation and pays excess valuation charge according to tariff rates, rules and regulations."

The simple answer to this claim is that the stipulation refers to baggage carried by the company as such, and not to goods in the nature of baggage shipped as freight or otherwise than as baggage. The plaintiff did not even attempt to intrust his trunk to the company for transportation as personal baggage under the contract evidenced by his passage ticket, but undertook to have it carried under quite a distinct and different contract. Indeed the plaintiff in his brief concedes that he has no claim on this score, for he agrees that the limitation of value imprinted upon the block ticket "had to do simply with bag-

gage checked in the regular baggage service on a passenger ticket, and had nothing whatever to do with the trunk placed in this [baggage] car."

There must be judgment for the defendant dismissing the complaint, with costs.

CLARKE, P. J., LAUGHLIN, SMITH and SHEARN, JJ., concurred.

Judgment for defendant dismissing complaint, with costs. Order to be settled on notice.